## MOLONEY v. CRESSLER.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1916.)

No. 2337.

1. LIMITATION OF ACTIONS ⊜⇒24(2)—PARTICULAR ACTIONS—PAROL CONTRACTS.
Where a written contract for the sale of all of the stock of a gas company referred to certain improvements to be made in the plant of the company as specified in plans and specifications already submitted, and each party attempted to supply the omission by incorporating into the contract a written statement, the contract was one in writing, to be governed by the 10-year statute of limitations (Hurd's Rev. St. Ill. 1915–16, c. 83).

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 113; Dec. Dig. ⊜⇒24(2).]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. LIMITATION OF ACTIONS ⊚⇒134—RUNNING OF STATUTE—TOLLING OF STATUTE.**

Before the running of limitations defendant filed in the state court a bill based on an Illinois contract, and within such time, and after removal of the cause to the federal court, complainant, defendant in the first suit, filed a cross-bill. After the period of limitation had expired, the cause was by order of the Circuit Court of Appeals remanded to the state court, and on the following day complainant filed his bill in the federal court on the same contract. Section 25 of the Illinois statute declares that if judgment shall have been given for plaintiff, and the same be reversed by writ of error or upon appeal, then, if the time limited for bringing such action shall have expired during the pendency of such suit, the plaintiff, his heirs, executors, or administrators, may commence a new action within one year after such judgment is reversed. *Held* that, though complainant in the first suit mistook his forum, nevertheless the filing of the cross-bill tolled the running of limitations, and after remand to the state court complainant might within the year institute a new action on the contract.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 570; Dec. Dig. ⊚⇒134.]

**3. PRINCIPAL AND AGENT ⊚⇒156—REPRESENTATIONS BY AGENT—LIABILITY OF PRINCIPAL.**

Where defendant, in negotiating for the purchase of the capital stock of a gas company, induced the superintendent in charge to make written misrepresentations as to its condition to assist him in securing financial backing for the project, and the owner did not know of his superintendent's misrepresentations, the owner is not bound thereby, and they cannot be considered in determining his liability on the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583–587; Dec. Dig. ⊚⇒156.]

**4. CORPORATIONS ⊚⇒121(3)—SALES OF STOCK—ACTIONS—LACHES.**

Where the owner of the capital stock of a gas company, who agreed in a contract of sale to make certain improvements, did not promptly complete the improvements, and did not demand payment as soon as they were completed, but the purchaser was in no way prejudiced, the owner cannot be held guilty of laches, precluding recovery.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ⊚⇒121(3).]

**5. SPECIFIC PERFORMANCE ⊚⇒70—SUBJECT OF SPECIFIC PERFORMANCE.**

A contract for the sale of the entire capital stock of a gas company, which property was not to be obtained on the open market, is one which may be specifically performed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 203; Dec. Dig. ⊚⇒70.]

**6. INTEREST ⊚⇒14—ALLOWANCE—RIGHT TO.**

Where a contract for the sale of the capital stock of a gas company required the purchaser to deposit a fixed sum, to be paid over to the seller on his completion of certain improvements, and the amount was not deposited, the seller, having consummated the contract and made the improvements, is entitled under the Illinois statute to interest at 5 per cent. on the amount from the date it should have been paid over, as well as interest on the balance due from the time it was ascertained and liquidated.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 26, 27; Dec. Dig. ⊚⇒14.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by Alfred D. Cressler against Maurice T. Moloney. From a decree for complainant, defendant appeals. Affirmed.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On about December 27, 1898, appellee called upon appellant at the Leland Hotel, Chicago, in reference to the sale of the gas works at Ottawa, Ill., concerning which negotiations had been in progress between J. W. Murdock, superintendent of the plant, and appellant for several months, and which had been the subject of a conversation between appellant and appellee on one prior occasion at the residence of appellant in Ottawa. On the date of the Leland Hotel visit appellee handed to appellant a proposition for the sale of the Ottawa gas plant, which was as follows:

"In accordance with general conversations I had with you in reference to the Ottawa Gas Company, I herewith submit the following proposition, viz.:

"I will sell you four hundred and fifty (450) shares, the full issue of the capital stock of the Ottawa Gaslight & Coke Company, for the sum of one hundred thousand dollars ($100,000), I to receive all accounts and bills receivable due the company and including all tar and coke on hand at date of transfer. I to pay all bills and accounts payable, except mortgage bonds, which I guarantee shall not exceed ($25,000), and deliver the property and works to you free of all indebtedness to said date, except said mortgage and bonds of the par value of $25,000, being twenty-five (25) bonds, of $1,000 each, dated May 1, 1894, maturing 1904, bearing 6 per cent. interest. All coal on hand, either for gas or fuel purposes, at date of transfer, to be paid for at invoice price. The gas stoves now in the office are on consignment, and will be billed to the company on March 1, due and payable May 1, 1899.

"I agree to build on lots Nos. 65 and 66, or at such location on the property of the company as you may select, one brick water tank and inner section gas holder of a capacity of 100,000 cubic feet as follows: The brick tank will be 77 feet in diameter by 24 feet 6 inches deep, the gas holder 73 feet 6 inches in diameter by 24 feet deep. The external guide frame will consist of 8 steel lattice columns and girders. The inlet and outlet connections will be 12 inches diameter.

"We will connect the holder to and from the works throughout the yard with 10-inch pipe and to the main 8-inch pipe in the yard leading to the street. We will remove and reset the two lime purifying boxes into the northeast corner room of the purifying house, remove the 4 oxide exhaust purifying boxes about 12 to 14 feet north and reset and connect same in complete working order; put in and set up in working order a hydraulic elevator 5 feet by 7 feet by 13 feet lift for handling the purifying materials from the basement to the top of the boxes; build a brick partition across the south end of purifying rooms, enlarge the condenser room to 20 feet long, and reset and connect in position according to plans furnished the present condensers and rotary washer.

"We will furnish a new 10-inch rotary exhauster, set same in place, and connect with the water gas plant and the present 50-foot diameter gas holder, thereby converting the latter into a relief holder. We will furnish and put in place a suitable track and dumping coal wagon for properly unloading gas coals from the cars and delivering same into bins. I will make all necessary changes in doors and windows of purifying and condenser rooms and basement, changing the windows and doors to conform to the changed location of the apparatus and wall up the openings of old doors and windows.

"We will cement, point, and put in first-class condition the exterior walls of the purifying and condenser building, including the painting of the cornices, windows, doors, etc. All work will be done in a first-class manner, and under your own or the personal supervision of your superintendent.

"On the transfer of the stock, payment shall be made of eighty thousand dollars ($80,000) in cash; the balance shall be paid during the construction and upon the completion of the improvements in the works herein specified.

"This proposition shall be void unless accepted in writing within ten days from date hereof. If accepted, the transfer of stock and payment of said eighty thousand ($80,000) shall be made on or before February 1, 1899, I to pay running expenses until such transfer and payment.

"The improvements in the works shall be commenced immediately upon the acceptance of this proposition and those in the buildings finished on or before sixty days, and the tank and holder on or before four months, provided the building of the brick tank shall not be delayed by cold or severe weather."

Prior to that date appellant advised appellee that he had caused the plant

to be examined by one F. K. Lane, a mechanical engineer, and one C. W. Knisely, an accountant, both of whom made fairly favorable reports. The former, in his statement, said:

"I consider the gas works in good physical condition. The buildings are substantial. The arrangement of machinery could have been better, but it will answer every purpose. If an examination of the books proves the profits to be a satisfactory return to you for the investment made, I can only say that no further outlay will be necessary on the plant, except for mains, until the present output is doubled. No material increase in sales can reasonably be expected without further growth of the city."

The accountant's report disclosed an annual income averaging $10,000. Thereafter such dealings between the two were had that on March 22, 1899, they entered into the following written agreement prepared by appellant, viz.:

"Know all men by these presents, that whereas, A. D. Cressler, of the city of Ft. Wayne, in the state of Indiana, is now the owner of all the stock of the Ottawa Gaslight & Coke Company, a corporation existing under the laws of the state of Illinois, situated in the city of Ottawa and county of La Salle, in said state;

"And whereas, the said A. D. Cressler has agreed to sell and has sold all of said stock to M. T. Moloney, of the city of Ottawa, in said county and state, and the said Moloney agrees to purchase the same for and in consideration of one hundred and fifteen thousand dollars;

"And whereas, there is now outstanding twenty-five bonds of one thousand dollars each, issued by said corporation and which are to be paid out of the said sum of one hundred and fifteen thousand dollars aforesaid;

"And whereas, there are certain improvements to be made in the plant of said company, as specified in certain plans and specifications already submitted by the said Cressler to the said Moloney: These presents witnesseth, that the said Moloney has now paid to the said Cressler, and this instrument hereby acknowledges the receipt of the sum of twenty-eight thousand dollars as a part and parcel of the sum of one hundred and fifteen thousand dollars, the balance of the said sum to be paid to the said Cressler as follows:

"The aforesaid twenty-five bonds of one thousand dollars each are to be presented to N. W. Harris & Co., bankers and brokers of the city of Chicago, to be paid by them in accordance with the written direction of the said Cressler. When said twenty-five bonds are thus liquidated, then the sum of twenty thousand dollars in addition thereto is to be retained in the possession of the said N. W. Harris & Co. until the improvements hereinbefore referred to are completed in said plant by the said Cressler.

"In the meantime, after the payment of the said twenty-five bonds, in the manner aforesaid, the said Cressler shall receive what remains of said consideration, except the said sum of twenty thousand dollars, which is not to be paid until the improvement or improvements already mentioned are completed and when said improvements are completed, the said Cressler is to receive the said sum of twenty thousand dollars so retained as aforesaid.

"It is further agreed that the said Moloney shall then be entitled to receive the said stock and to have the said control and ownership of said company and its property as of the 1st day of January, 1899; that all outstanding indebtedness up to the 1st day of January, 1899, against the said corporation, if any, is to be liquidated; and all liabilities contracted by said corporation since then, as well as profits, if any, are to be borne on the one hand and received on the other by the said Moloney, that is to say: The said Moloney is to be considered as owning said company and the stock thereof since the 1st day of January, 1899, and all indebtedness of every kind up to that day, if any, owing by said company, must be liquidated by the said Cressler.

"Now, this instrument further witnesseth that the stock hereinbefore referred to is placed with this agreement in the vaults of the said N. W. Harris & Co. as an escrow, to be delivered to and the legal title of which pass to the said Moloney when the said Cressler receives all of the consideration hereinbefore mentioned, in manner and form as herein stated.

"It is further understood, inasmuch as all the indebtedness, floating and otherwise, of the said company is to be liquidated which existed up to and including the 31st day of December, 1898, as aforesaid, by the said Cressler,

it is agreed that any moneys owing said company at the date, and earned by it prior thereto, are to be paid to the said Cressler.

"This instrument is made out in three parts, one to be deposited with stock as aforesaid, the said Cressler and the said Moloney each retaining the two remaining parts."

The $20,000 required by the contract to be left with Harris & Co. was never in fact so deposited. Thereafter appellant, desiring, for purpose of making a loan of $100,000, to consolidate the old corporation with a new corporation organized by him, secured the consent of appellee to that end, and thereupon entered into a supplemental written agreement, which is in words and figures as follows, viz.:

"Know all men by these presents, that whereas, A. D. Cressler and M. T. Moloney, on the 22d day of March, 1899, entered into a written contract for the sale by the said Cressler of all the stock of the Ottawa Gaslight & Coke Company to the said M. T. Moloney, who thereby agreed to purchase the same for and in consideration of $15,000.00; and whereas, by the terms of said agreement, it was among other things provided and agreed that the stock of said company should be placed with the copy of said agreement in the vaults of N. W. Harris & Co. as an escrow to be delivered to, and the legal title thereto was to pass to said Moloney when said Cressler received all of said consideration therefor in the manner and form as provided in said agreement; and whereas, the said Moloney desires to consolidate and merge the said Ottawa Gaslight & Coke Company and the Ottawa City Gas Company into one corporation, to be hereafter known as the Ottawa Gaslight & Coke Company, and also desires that the said Cressler and the trustees of the said Ottawa Gaslight & Coke Company shall consent to said consolidation and merger;

"Now, therefore, it is hereby agreed that the consent and act of said Cressler and of said trustees shall in no way affect the liabilities of the said Moloney to purchase and pay for said stock in accordance with the terms of said agreement, bearing date of March 22, 1899; but that the same shall remain in full force and effect as if said consolidation and merger had not been made. It is further agreed that all of the stock and any bonds issued by said consolidated company shall be immediately delivered to and placed in the possession of said N. W. Harris & Co. to be by them held as collateral security for the performance of said written agreement on the part of said Moloney.

"This instrument is made out in three parts, one to be deposited with the said N. W. Harris & Co. as aforesaid, the said Cressler and the said Moloney each retaining the two remaining parts.

"In witness thereof, said parties have hereunto set their hands and seals this 26th day of May, 1899."

In his endeavors to see whether he could finance the transaction, appellant secured from Murdock, the superintendent of the old company, without the knowledge of appellee, a statement of the condition of the company, which, among other matters, set out that the plant had "21 miles of new mains laid within the past six years." This was not true. Appellant used this statement in securing a loan and left it with Harris & Co. and their successors until legal proceedings were begun. For deficiency of mains and for other discrepancies, appellant seeks in his answer an off-set in excess of $25,000. There were incorporated in Murdock's report items taken from the Lane and Knisely reports. Appellant seeks to identify this report with the "certain plans and specifications" referred to in the original contract of March 22, 1899; whereas appellee insists that by said clause reference is had to the proposition of December 26, 1898.

Promptly after the contract was signed, appellee proceeded to make the improvements referred to in the proposition of December 26, 1898. In the performance of this undertaking, and especially in the work attending the construction of a certain gas holder or tank, there was considerable difficulty, resulting in a delay beyond the time contemplated. Some delay was had in securing the retirement of the bonds of the old company. While some impatience is manifested on the part of appellant at the various delays, the business of the gas plant is not shown to have been interfered with. Appellee did not confine his improvements to the items contained in his proposition of December 26, 1898. He seems to have been active in business matters, which

fact, together with the fact that he was a nonresident, seems to have contributed somewhat to the difficulties experienced in constructing the gas holder. Appellant proceeded to have improvements made other than those covered by appellee's proposition, such as switch extensions, new barn, coke shed, coal house, coke crusher, scales, etc. Of these improvements, appellee had no knowledge until settlement was sought. Appellant on his part failed to comply with the terms of the contract of May 26, 1899, which required him to deposit "the stock and any bonds issued by said consolidated company" in the possession of Harris & Co., but, on the contrary, without appellee's knowledge or consent, sold both the bonds and the stock and appropriated the proceeds, amounting to about $150,000. Appellee has been paid in cash, or by payments on his account, the sum of $101,468.29. He is entitled to undisputed credits aggregating $125,049.17. Appellant seeks to charge appellee with further items based upon certain alleged misrepresentations made by Murdock and others, together with his failure to make improvements and complete the same, as it is claimed, the contracts between them required, which, if established, would leave appellee largely indebted to appellant. On June 12, 1906, appellant offered to pay appellee by way of compromise, $7,402.72. Failing to come to terms, appellant filed his bill in the circuit court of Cook county, Ill., on September 15, 1906, for specific performance and accounting against appellee and N. W. Harris & Co. This suit appellee removed to the United States Circuit Court for the Northern District of Illinois. Thereafter such further proceedings were had that that court entered a decree against appellant for the sum of $28,248.03. On appeal that judgment was reversed, and the cause ordered remanded to the state court, on the ground that the federal court was without jurisdiction. In pursuance of such remanding order the case was remanded to the state court on November 21, 1913.

On November 22, 1913, the present suit was instituted. Thereafter such proceedings were had that the District Court entered a decree against appellant for the sum of $38,748.73, being the said sum shown by the undisputed items, viz. $23,580.88, with accrued interest, after deducting costs of former suit amounting to $1,552.05 and accrued interest thereon, and also decreed that the shares of the stock of the old corporation held in escrow by Harris Trust & Savings Bank as successor to Harris & Co., and the four shares on deposit with the clerk of the court, be turned over to appellant when said decreed amount should be paid. The court further ordered that execution issue and that appellant pay the costs of the suit. From that decree appellant has brought this appeal. A large number of errors are assigned, the substance of which is as follows, viz.: The court failed to enforce the statute of limitations. The court failed to find appellee guilty of laches. The court erred in the amount of principal and interest decreed. The court erred in not receiving the Murdock statement as the one referred to in the contract. The court erred in not finding that the contract of March 22, 1899, failed to express the intention of the parties. The court failed to find that appellee recognized to make all improvements necessary to constitute the property a first-class plant and that he failed to comply with the contract in that respect. The court failed to find that appellant was led to enter into the contract through fraudulent representations, appellee knowing them to be false. The court failed to find that appellant performed the contract on his part and that appellee did not perform his part. The court erred in awarding interest to appellee. The court erred in not holding that the statute of limitations had run against this suit.

Further facts appear in the opinion.

James J. Conway, of Ottawa, Ill., for appellant.
William S. Oppenheim, of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] Initially, it is urged that this suit is barred by the statute of limitations of the state of Illinois (Hurd's Rev. Stat. 1915–16, c. 83).

The first ground of that claim rests upon the charge that the contract sued on was a parol contract. Although this is not specifically set out in the assignment of errors, it may properly be urged as affecting the bar of the statute of limitations. The contract of March 22, 1899, refers to "certain improvements to be made in the plant of said company as specified in certain plans and specifications already submitted by the said Cressler to the said Moloney," which clause requires proof aliunde the contract. This fact, it is claimed by appellant, makes the contract one by parol, or one having a life of five years, rather than ten years. It is appellee's contention that the clause just quoted refers to the proposition made by him to appellant in the letter of December 26, 1898, while appellant asserts that it refers to the statement made by the Ottawa Gaslight & Coke Company, per J. W. Murdock, dated January 4, 1898, by mistake for January 4, 1899. Thus it will be seen that it is attempted to incorporate into said contract a written statement, and not any parol matter, and the question is merely one of identity. Inasmuch as both parties rely on the supplying of the description of the improvements contemplated, this objection does not seem to be definitely urged in the assignment of errors, and we do not discuss it further than to say that appellant's contention cannot be successfully maintained as the law now stands. Jones v. Knights of Honor, 236 Ill. 113, 86 N. E. 191, 127 Am. St. Rep. 277; Nickerson v. Weld, 204 Mass. 346, 90 N. E. 589; Beckwith v. Talbot, 95 U. S. 289, 24 L. Ed. 496; Forst v. Leonard, 112 Ala. 296, 20 South. 587; and numerous other cases. We therefore hold that the contract of March 22, 1899, was a written contract, and that appellee's suit was governed by the ten-year clause of the Illinois statute of limitations.

[2] Appellant further insists that, even in that case, this action was not brought in time. Appellant filed his bill in the state court on September 15, 1906. The cause was removed to the United States Circuit Court November 3, 1906. Appellee filed his cross-bill, setting up substantially the same matters as those set up herein, on March 15, 1907. The cause was, by order of the Circuit Court of Appeals, remanded to the state court on November 21, 1913. On November 22, 1913, this suit was instituted under and by virtue of section 25 of the statute of Illinois, which reads in part as follows, viz.:

"In any of the actions specified in any of the sections of the said act, if judgment shall be given for the plaintiff and the same be reversed by writ of error or upon appeal * * * then if the time limited for bringing such action shall have expired during the pendency of such suit the said plaintiff, his or her heirs, executors or administrators, as the case shall require, may commence a new action within one year after such judgment reversed or given against the plaintiff, and not after."

This, we hold, was properly done under said clause of the statute. The facts of the case brought that suit within the provision of the act. Smith v. McNeal, 109 U. S. 426, 3 Sup. Ct. 319, 27 L. Ed. 986. In that case the suit was dismissed for want of jurisdiction. Another action being brought after the statute had run unless extended by the Tennessee statute as here, the court said:

"We are of opinion, therefore, * * * plaintiffs in error are entitled to the benefit of article 2755 of the Code of Tennessee, for their judgment in the first

suit was not upon any ground concluding their right of action, nor have they been guilty of such negligence or carelessness in the bringing of their first suit as should exclude them from the benefit of the said article."

See, also, Lamson v. Hutchings, 118 Fed. 321, 55 C. C. A. 245; McAndrews v. C. L. S. & E. Ry. Co., 162 Fed. 856, 89 C. C. A. 546; P. C. C. & St. L. Ry. Co. v. Bemis, 64 Ohio St. 26, 59 N. E. 745; Bennett v. Welch, 25 Ind. 140, 87 Am. Dec. 354; and many other cases cited in appellee's brief.

[3] It is evident that appellee removed this cause, seeking the aid of federal jurisdiction, in good faith, and not for delay or other ulterior cause. In Gaines v. City of New York, 215 N. Y. 533, 109 N. E. 594, Ann. Cas. 1916A, 259, where a similar statute prevails, it is said:

"A suitor who invokes in good faith the aid of a court of justice, and who initiates a proceeding by the service of process, must be held to have commenced an action within the meaning of this statute, though he has mistaken his forum. We are asked what ought to be held, if a litigant sues on a promissory note in the Surrogate's Court, or files a bill in equity with a justice of the peace. It may be that a different rule should be applied where the earlier action has been brought with knowledge of the lack of jurisdiction, and in fraud of the statute."

We do not deem it necessary to pass upon the point raised as to whether a federal court of equity is bound by state statutes of limitations. We therefore hold the question of the statute of limitations to be not well taken.

It is our conclusion from the evidence that the reference to improvements in the contract of March 22, 1899, related to the proposition of sale contained in appellee's letter of December 26, 1898. We are satisfied that Murdock, in his capacity of superintendent, was not acting with the direction or consent of appellee; that the latter was not responsible for any statements he may have made, although he (Murdock) does not seem to have willfully misrepresented anything. His statement was made at appellant's suggestion, for use in procuring a loan from Harris & Co., and was not submitted or known to appellee until long afterwards. It was kept by Harris & Co. and not disclosed to appellee, though with no intention to keep it secret. It therefore could not have been in appellee's mind when he entered into the contract of March 22, 1899.

[4] We deem appellee's action a substantial compliance with the terms of the contract of sale. He placed the improvements called for in what seem to be competent hands. The gas holder appears to have been a difficult piece of work. Its leakings were obscure, and were finally located in the foundation. The record does not show that appellant suffered any loss from the delay. There seems to have been a misunderstanding as to the terms of the sale agreement. The correspondence shows some slackness on appellee's part in making his position clear upon that point, even to the extent of doing more than the contract required of him. We find, however, no justification for the withholding of the bulk of the money due appellee. Appellant was not entitled to the proceeds of the bonds and stock until appellee was paid up in full, nor was he entitled to the sums claimed by

him for services and damages. These almost entirely grew out of appellant's misconstruction of the provision in the contract with regard to improvements aforesaid. We are satisfied that the balance of $23,-580.88, found by the trial court herein, and also in the former proceedings hereinbefore enumerated, to be due appellee upon the purchase price, was correct.

[5] There is no merit in the contention that appellee was guilty of laches in the premises. There was continual contention between the parties. It was appellant's duty to pay what he owed, and the mere fact that appellee was not continually hounding him for the balance due would not justify such a contention. Nor do we find merit in the claim that a suit for specific performance would not lie under the facts of this case. The transaction involved the whole capital stock of the corporation, which was property not to be obtained in the open market. The stock itself was to be held by the bank, until payment should be made to appellee in full, for the benefit of both parties.

[6] The $20,000, required by the contract of March 22, 1899, to be deposited by appellant with Harris & Co. to insure performance by appellee of his part of that contract, never having been so deposited, still remained in appellant's possession and enjoyment. Appellee's undertakings were completed by November 15, 1901. This sum should then have been paid over by appellant. For this sum appellee is entitled to interest at the rate of 5 per cent. under the statute of Illinois. It was a liquidated sum, and not affected by the existence of an unliquidated claim for damages because of the delay in completing the work. Appellee was also entitled to payment of the balance of the purchase price of the plant, at the latest on August 18, 1909. This balance, amounting to $3,580.88, should likewise bear interest at the rate of 5 per cent. from the last-named date.

There is no merit in the claim that appellee did not deliver all the stock to appellant. The latter was not entitled to it until full payment had been made. The remaining shares of stock are in the possession of and subject to the order of the court, and will undoubtedly be turned over when payment is shown.

As before stated, no substantial damages are shown to have been sustained by appellant by reason of the delay in perfecting the gas holder, nor is any basis established for ascertaining the same.

We find no error in the decree of the trial court, and it is therefore affirmed.