DAVID H. GAINES, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Limitation of actions — when action commenced in court without jurisdiction suspends running of Statute of Limitations — new action may be commenced within one year after dismissal of first — negligence — municipal corporations — when failure to light bridge not proximate cause of accident.

1. A suitor who invokes in good faith the aid of a court of justice and who initiates a proceeding by the service of process must be held to have commenced an action, even if he has mistaken his forum, within the meaning of the statute, limiting the period for beginning actions of negligence against the city of New York to one year from the time the cause of action shall have accrued (L. 1901, ch. 466, § 261; amd. L. 1907, ch. 677); and, hence, where an action for negligence against the city was commenced in a City Court within a year after the accident, but was dismissed for want of jurisdiction, the statute is suspended, and another action for the same cause brought in a court of competent jurisdiction within one year after the first action was dismissed may be maintained. (Code Civ. Pro. § 405.)

2. Plaintiff, who was driving his automobile, ran against a steel truss or girder which divides the carriageway of a bridge over a railroad cut in the city of New York. The evening was dark; there were no lights on the bridge, and a cloud of steam from a passing train settled down on the truss and obscured its presence. Plaintiff saw this cloud, which he mistook for a fog, which was so dense that the lights of his own car could not penetrate it, and he could not see five or six feet. He reduced the speed of his automobile, but drove on into the area of the cloud and crashed against the girder, thereby damaging his car. He brings this action upon the ground that the lights provided at the sides of the bridge were not lighted and that there was no light upon the central truss or girder. *Held*, that the defendant would have discharged its duty fully if it had lighted the brackets on each side of the bridge, and that, so far as the record shows, the central truss would still have been enveloped in cloud; and, hence, if the defendant was negligent, the injury to the plaintiff did not follow as a proximate result.

*Gaines* v. *City of New York*, 156 App. Div. 789, affirmed.

(Argued June 16, 1915; decided July 13, 1915.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 11, 1913, which affirmed a determination of the Appellate Term reversing a judgment of the Municipal Court of the city of New York in favor of plaintiff and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John David Lannon* for appellant. The claim is not barred by the Statute of Limitations. (Code Civ. Pro. § 405; *People* v. *Helmer,* 154 N. Y. 596; *Cohens* v. *Virginia,* 19 U. S. 264; *P., C., C. & St. L. Ry. Co.* v. *Bemis,* 64 Ohio St. 26; *O'Connor* v. *City of New York,* 191 N. Y. 238; *Day* v. *Sun Ins. Office,* 167 N. Y. 543; *Hempsted* v. *White S. M. Co.,* 134 App. Div. 575; *Titus* v. *Poole,* 145 N. Y. 414; *Atlanta, K. & N. Ry. Co.* v. *Wilson,* 119 Ga. 781; *Wood* v. *Houghton,* 1 Gray, 580; *Coffin* v. *Cottle,* 16 Pick. 383.) The girder in the middle of the bridge on Girard avenue was a dangerous obstruction, and defendant was bound to protect travelers along the avenue against injury therefrom. (*Corcoran* v. *City of New York,* 188 N. Y. 131; *Urquhart* v. *City of Ogdensburg,* 91 N. Y. 67; *Collett* v. *Mayor, etc.,* 51 App. Div. 394; *Ring* v. *City of Cohoes,* 77 N. Y. 83; *Sweet* v. *Perkins,* 196 N. Y. 482.)

*Frank L. Polk, Corporation Counsel (Terence Farley* of counsel), for respondent. The defendant was not negligent. The trial justice, therefore, erred in denying its motion to dismiss the complaint. (*Urquhart* v. *City of Ogdensburg,* 91 N. Y. 67; *Conlon* v. *City of St. Paul,* 70 Minn. 206; *McDonald* v. *City of Duluth,* 73 Minn. 206; *Walters* v. *City of Omaha,* 76 Neb. 855; *O'Donnell* v. *City of Syracuse,* 184 N. Y. 1; *Howard* v. *City of Buffalo,* 211 N. Y. 241; *Owen* v. *City of New York,* 141

App. Div. 217.) Ordinarily, a municipality cannot be held liable for an accident which is caused solely by its failure to light its bridges and its roadways. (Jones on Mun. Neg. § 85; *O'Rourke* v. *Mayor, etc., of New York,* 17 App. Div. 349; *Platt* v. *Mayor, etc., of New York,* 8 Misc. Rep. 409; 159 N. Y. 159; *Gaskins* v. *Atlanta,* 73 Ga. 746; *City of Columbus* v. *Simms,* 94 Ga. 483; *Freeport* v. *Isbell,* 83 Ill. 440; *Macomber* v. *Taunton,* 100 Mass. 255; *Randall* v. *Eastern R. Co.,* 106 Mass. 276; *Lynch* v. *City of Cambridge,* 136 Mass. 409; *Butler* v. *Bangor,* 67 Me. 385; *Miller* v. *St. Paul,* 38 Minn. 134.) Assuming, but not conceding, that the city was under the duty of lighting the street at the time and place of the accident, nevertheless the plaintiff failed to prove that the absence of light, and not the truss of the bridge, was the proximate cause of the accident. (*Taylor* v. *City of Yonkers,* 105 N. Y. 202.) As the City Court of the city of New York did not have jurisdiction of an action against the city of New York, the attempt to bring such an action in that court did not relieve the plaintiff from the necessity of complying with section 261 of the charter, which limits the time for the commencement of an action to one year after the cause of action therefor shall have accrued. (*Frank* v. *City of New York,* 133 N. Y. Supp. 434; *O'Connor* v. *City of New York,* 51 Misc. Rep. 560; 120 App. Div. 875; 191 N. Y. 238; *B. H. & S. M. & C. Co.* v. *S. M. Co.,* 109 Fed. Rep. 504; 1 Black on Judgments [2d ed.], § 170; *Smith* v. *McNeal,* 129 U. S. 426; *People ex rel. Saunders* v. *Colborne,* 20 How. Pr. 378; *Willey* v. *Shaver,* 1 T. & C. 324; *Kimball* v. *Baxter,* 27 Vt. 628; *People* v. *Elliott,* 172 N. Y. 146.)

CARDOZO, J. In the evening of November 28, 1909, the plaintiff's automobile ran against a steel truss, which divides the carriageway of a bridge in the city of New York. The bridge is part of Gerard avenue, in the bor-

ough of the Bronx, and spans a railroad cut between One Hundred and Fifty-first and One Hundred and Fifty-third streets. The evening was dark; there were no lights on the bridge; and a cloud of steam from a passing train settled down on the truss and obscured its presence. The driver of the car, when about a hundred and fifty feet from the bridge, saw this cloud of steam, which he says he mistook for a fog. He reduced his speed, which was then about twelve miles an hour, to six or eight miles, but drove on into the area of the cloud. His lights under ordinary conditions showed him the road ahead for a thousand feet. The fog was so dense, however, that he could not see five or six feet. He could not even see the radiator of his car. The next thing he knew, he had crashed against the granite blocks of the girder. The car was damaged, and the owner brings this action to make good the loss. In the Municipal Court he had a judgment in his favor. The Appellate Term reversed it and dismissed the complaint. An appeal to the Appellate Division followed; and the determination of the Appellate Term was affirmed. Both the Appellate Division and the Appellate Term held, though not without dissent, that the action was barred by the Statute of Limitations. The Appellate Division also held that the defendant's negligence, if any, was not the proximate cause of the injury to the car.

The question of the statutory limitation is the first to be considered. This action was not begun till January, 1912. That was too late unless the running of the statute had for some cause been suspended. The ordinary period of limitation in actions for negligence against the city of New York is one year (Greater New York charter, section 261). The plaintiff says, however, that the running of the statute *was* suspended. He brought an action for the same cause before the year expired, but brought it in the City Court. That court has no jurisdiction of actions against the city of New York (*O'Connor* v. *City of New York*, 191 N. Y. 238). The earlier action, when it came

on for trial in November, 1911, was dismissed upon that ground. The plaintiff asks us, in these circumstances, to apply the rule of limitation laid down in section 405 of the Code of Civil Procedure. It is there said: "If an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal, without awarding a new trial; or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits; the plaintiff, or, if he dies, and the cause of action survives, his representative, may commence a new action for the same cause, after the expiration of the time so limited, and within one year after such a reversal or termination." Both the Appellate Term and the Appellate Division have held that the limitation prescribed by that section does not apply where the first action has been dismissed for the failure of jurisdiction. They have held that such an action is a nullity for all purposes. We do not share that view.

The statute to be construed (Code Civ. Pr. sec. 405) has its roots in the distant past. By the English Limitation Act of 1623 (21 Jac. 1, c. 16, s. 4) it was provided "that if in any the said actions or suits, judgment be given for the plaintiff, and the same be reversed by error, or a verdict pass for the plaintiff, and upon matter alleged in arrest of judgment, the judgment be given against the plaintiff, that he take nothing by his plaint, writ or bill; or if any of the said actions shall be brought by original, and the defendant therein be outlawed, and shall after reverse the outlawry; that in all such cases the party plaintiff, his heirs, executors or administrators, as the case shall require, may commence a new action or suit, from time to time, within a year after such judgment reversed, or such given against the plaintiff, or outlawry reversed, and not after." This section was extended by an equitable construction to cases not strictly within its letter (*Swindell* v. *Bulkeley*, L. R. [18 Q. B. D.] 250).

The section was copied into our own laws by a statute enacted in 1788 (L. 1788, ch. 43) and again in 1801 (1 R. L. 186, sec. 5). It then passed into the Revised Statutes (2 R. S. [1st ed.] 298, sec. 33). As thus re-enacted it read: "If any action shall have been commenced within the times respectively prescribed in the three first Articles of this Title, and judgment be given therein for the plaintiff, and the same be arrested or reversed on error, the plaintiff may commence a new action, from time to time, within one year after such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may in like manner commence a new action, within the time herein allowed to such plaintiff." The substance of that provision was carried forward into the Code of Procedure (section 84). As it was first adopted in that Code it read: "If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed, on appeal, the plaintiff, or if he die and the cause of action survive, his heirs or representatives, may commence a new action within one year after the reversal." There are verbal differences between that section and the corresponding section of the Revised Statutes, but the report of the commissioners shows that the differences are without significance in the determination of the case at hand. The commissioners say in their report: "This provision is the same as 2 R. S. 396, section 33, except that it provides for the case of a reversal of a judgment only and not for the case of an arrest of judgment as in the corresponding provision of the Revised Statutes. The reason of this difference is that with a view to compel the defendant to avail himself of any objection he may have to the plaintiff's recovery arising upon the face of the complaint, it is proposed by section 127 to treat his omission to demur or answer as a waiver of the objection, except where it is to the jurisdiction of the court over the subject of the action."

This statement makes it plain that there was no intent to exclude from the benefit of the section a litigant whose action had been dismissed for lack of jurisdiction. Section 84 of the Code of Procedure was amended in 1863 (L. 1863, ch. 392). As re-enacted in the present Code (section 405) its scope was broadened. It was made applicable, not only where the judgment in the first action was reversed on appeal, but also to every case where the first action was terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute, or a final judgment upon the merits. We think that whatever verbal differences exist, the purpose and scope of the present statute are identical in substance with its prototype, the English act of 1623.

That the plaintiff's case is within the letter of the statute is hardly doubtful. He brought an action against the defendant, and the action was terminated otherwise than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute, or a final judgment upon the merits. If the protection of the statute is to be denied to him, it ought to be clearly shown that his case, though within the letter of the statute, is not within its reason. We think that the defendant has been unable to sustain that burden. The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction, stands on the same plane as any other mistake of law. Questions of jurisdiction are often obscure and intricate. This very question of the power of the City Court to determine actions against the city of New York, will illustrate that truth

(*O'Connor* v. *City of New York*, 51 Misc. Rep. 560; 191 N. Y. 238). There is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the consequences of any other error in respect of a suitor's rights.

The defendant argues that an action dismissed for want of jurisdiction is a nullity in the same sense as if it had never been begun at all. But that is an extreme view. Such an action has at least some of the consequences of an action begun in a court of competent jurisdiction. It is the rule in this state that a dismissal for lack of jurisdiction does not strip the court of power to render judgment for the costs (*Day* v. *Sun Ins. Co.*, 40 App. Div. 305; affd. on opinion below, 167 N. Y. 543; *Hempsted* v. *White Sewing Machine Co.*, 134 App. Div. 575; *O'Connor* v. *City of New York*, *supra*). For some purposes, therefore, we may speak of an action as pending, though the court is without jurisdiction to adjudicate its merits. It seems that in the federal courts, the power to award costs, where there is a failure of jurisdiction, has been disputed (*Mayor* v. *Cooper*, 6 Wall. 247; *Citizens' Bank* v. *Cannon*, 164 U. S. 319, 324). Even in those courts, however, the sentence or determination of a court dismissing a cause for want of jurisdiction is held to be a judgment (*Mansfield, C. & L. M. Ry. Co.* v. *Swan*, 111 U. S. 379, 387); and when reviewed by writ of error or appeal, costs in the reviewing tribunal will be awarded to the prevailing party (*Mansfield, C. & L. M. Ry. Co.* v. *Swan, supra*). But it is not upon the ground that the plaintiff became liable for the costs that we rest our decision. We construe the statute broadly in the light of its history and purpose. If the first action had resulted in a judgment for the plaintiff, and the defendant had prevailed upon appeal, it would be a strained use of language to say that no action had ever been begun (*Mansfield, C. & L. M. Ry. Co.* v. *Swan*, 111 U. S. 379, 387). A suitor who invokes in good faith the aid of a court of justice and who initiates a

proceeding by the service of process, must be held to have commenced an action within the meaning of this statute, though he has mistaken his forum. We are asked what ought to be held, if a litigant sues on a promissory note in the Surrogate's Court, or files a bill in equity with a justice of the peace. It may be that a different rule should be applied where the earlier action has been brought with knowledge of the lack of jurisdiction, and in fraud of the statute (*Smith* v. *McNeal,* 109 U. S. 426). Whether that is so we need not inquire at this time. Grotesque or fanciful situations, such as those supposed, will have to be dealt with when they arise. That they are conceivable, though improbable, ought not to govern our construction. The rule of the statute was enacted to meet the exigencies of the ordinary rather than the exceptional case, to save the rights of the honest rather than the fraudulent suitor. There is no suggestion of bad faith in the plaintiff's selection of the City Court. We think his error ought not to bar the prosecution of his action.

The conclusion to which we are thus led, has support in many well-considered cases. It is the rule in most of the state courts: in Massachusetts (*Woods* v. *Houghton,* 1 Gray, 580; *Coffin* v. *Cottle,* 16 Pick. 383; *Taft* v. *Stow,* 174 Mass. 171); in Ohio (*Pittsburgh, C., C. & St. L. Ry. Co.* v. *Bemis,* 64 Ohio St. 26); in Kansas (*Ball* v. *Biggam,* 6 Kan. App. 42); in Arkansas (*Little Rock, etc., Ry. Co.* v. *Manees,* 49 Ark. 248); in Georgia (*Atlanta, K. & N. Ry. Co.* v. *Wilson,* 119 Ga. 781); in North Carolina (*Harris* v. *Davenport,* 132 N. C. 697); in Louisiana (*Blume* v. *City of New Orleans,* 104 La. Ann. 345, 348); and in Mississippi (*Weathersly* v. *Weathersly,* 31 Miss. 662). In all these cases the statute was held suspended though the earlier action was dismissed for lack of jurisdiction either of the subject-matter or of the person. It is the rule adopted by judges of high authority in the federal courts (*McCormick* v. *Eliot,* 43 Fed. Rep. 469; *Caldwell*

v. *Harding*, 1 Lowell, 326). It is also, we think, in harmony with the decision of the Supreme Court of the United States in *Smith* v. *McNeal* (109 U. S. 426). But one decision (*Sweet* v. *Electric Light Co.*, 97 Tenn. 252) sustains a contrary view. *Donnell* v. *Gatchell* (38 Me. 217) construed a statute which suspended the running of the statute "for any matter of form." Even such a statute was held, however, in Massachusetts (*Woods* v. *Houghton, supra*) to include defects of jurisdiction. *Keystone Mut. Ben. Assn.* v. *Norris* (115 Pa. St. 446, 451) construed a contractual limitation, and we think is not applicable. But even if these two cases be added to the other column, the weight of precedent sustains the more liberal construction.

Holding, as we do, that the Statute of Limitations is not a bar, we reach the merits of the controversy. These, in our judgment, must be held to be with the defendant. The negligence complained of is the omission to light the bridge. The girder, it is said, was an obstruction of the highway; and our decision in *Corcoran* v. *City of New York* (188 N. Y. 131) is cited for the proposition that the city was under a duty, by suitable lights, to give warning to the traveler of this unsuspected danger. If it be assumed that the duty existed, the failure to fulfill it was not the proximate cause of the injury. The bridge on each side had brackets intended for lights. If the lights had been lit, they would not have disclosed the central truss. They might conceivably have shone through the cloud of steam so as to reveal the sides of the bridge. Even that has not been proved. But certainly there is no evidence that they would have revealed the girder in the center. That was obscured by a cloud so dense that the strong lights of the car could not penetrate it. Perhaps, a light on the truss itself might have shone through the cloud, and warned the approaching traveler. We can do little more than guess whether it would or would not have done so. Its color, location and power

would have to be known. But even if such a light would have been helpful, we do not think that the defendant was under a duty to furnish it. Lights on each side of the bridge would have been adequate except for the cloud of steam. The cloud settled in such a way on this occasion, owing to conditions of wind and weather, that the truss was blotted from view. If it had not settled in just that way, if conditions of wind and weather had been different, the truss might have been seen. There is no evidence that either through previous accidents or otherwise the defendant had warning of the danger. In the absence of some warning, we think that a separate light on the truss would have been an extraordinary precaution. Whether it would have been effective, even if supplied, the evidence does not show. We hold that the defendant would have discharged its duty fully if it had lighted the brackets erected on each side of the bridge; that the central truss, so far as the record shows, would still have been enveloped in cloud; and, hence, that if the defendant was negligent, injury to the plaintiff did not follow as a proximate result.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, COLLIN, CUDDEBACK and MILLER, JJ., concur; SEABURY, J., not sitting.

Judgment affirmed.