Travis J. ROSS, a/k/a Jerry Ross; and Louise Ross, Respondents,

v.

KELSEY HAYES, INC., a Delaware corporation, and Bridgestone/Firestone, Inc., f/k/a Firestone Tire & Rubber Co., Petitioners.

No. 77018.

Supreme Court of Oklahoma.

July 30, 1991.

Rehearing Denied March 17, 1992.

William D. Pettigrew, Michael L. Noland, Oklahoma City, for petitioner, Bridgestone/Firestone, Inc.

C. William Threlkeld, C. Todd Ward, Oklahoma City, for petitioner, Kelsey Hayes, Inc.

Rex K. Travis, Oklahoma City, Eugene B. Ralston, Topeka, Kan., for respondents.

KAUGER, Justice.

The question presented is whether an action dismissed without prejudice, in which the defendants have not been served with summons, may be refiled within one

year of the dismissal pursuant to the savings clause of 12 O.S.1981 § 100.[1] We find that it may.

## FACTS

On December 7, 1987, the respondent, Travis J. Ross (Ross), was injured when a tire he was inflating exploded. Ross filed suit against the petitioners, Kelsey Hayes, Inc. and Bridgestone/Firestone, Inc. (collectively, Bridgestone/Firestone/manufacturers), on July 21, 1989, under a theory of manufacturers' products liability. Ross alleged that the metal wheel and tire were defective in design and/or manufacture when they were placed in the stream of commerce. On November 21, 1989, without having served the manufacturers with notice of the action, Ross dismissed his cause without prejudice.[2] The statute of limitations on Ross's cause of action ran on December 7, 1989.[3]

Relying on the same cause of action, Ross filed a new action on October 21, 1990. Bridgestone/Firestone was served with summons on October 30. On November 25, 1990, the petition was amended to reflect the institution of the previous cause and its dismissal without prejudice. The manufacturers filed a motion to dismiss on December 13, contending that the suit was time barred. Because they were not notified of the original action by service of summons, Bridgestone/Firestone argued that the action had not been properly commenced pursuant to § 100 and that its savings provision did not apply. Although the trial court denied the manufacturers' motion to dismiss on January 11, 1991, the judge certified for interlocutory appeal, pursuant to 12 O.S.1981 § 952(b)(3),[4] the question of whether an action dismissed without prejudice in which the defendants have not been served with summons may be refiled within one year of the dismissal pursuant to the savings clause of 12 O.S. 1981 § 100. The petition for certiorari was granted on March 8, 1991, setting a briefing cycle and directing Bridgestone/Firestone to prepare and transmit the record on certiorari. The briefing cycle was completed on May 20, 1991.

1. Title 12 O.S.1981 § 100 provides:
   "If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than on the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed."

2. Title 12 O.S.1981 § 684 provides in pertinent part:
   "A plaintiff may, on the payment of costs and without an order of court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action...."

3. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1361 (Okla.1974); Title 12 O.S.1981 § 95 provides in pertinent part:
   "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
   ... Third. Within two (2) years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; and not an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud...."

4. Title 12 O.S.1981 § 952 provides in pertinent part:
   "... (b) *The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:*
   ... 3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue...."

AN ACTION DISMISSED WITHOUT PREJUDICE IN WHICH THE DEFENDANTS HAVE NOT BEEN SERVED WITH SUMMONS MAY BE REFILED WITHIN ONE YEAR OF THE DISMISSAL PURSUANT TO THE SAVINGS CLAUSE OF 12 O.S. 1981 § 100.

Bridgestone/Firestone argues that the savings provision [5] of 12 O.S.1981 § 100 may not be invoked to extend the statute of limitations for one year from the date of a voluntary dismissal if the plaintiff does not serve the defendant in the original cause. The manufacturer also insists that application of the renewal provisions of § 100 to extend the statute of limitations in causes in which the defendant has not been notified of the original claim violates due process.[6] Ross asserts that an action is "commenced" within the meaning of § 100 by filing a petition and that service of summons is not constitutionally required to invoke the recommencement-of-actions provision. We agree.

## A.

*An action is "commenced" pursuant to 12 O.S.Supp.1984 § 2003 and 12 O.S. 1981 § 100 by filing a petition with the court.*

Prior to the institution of the Oklahoma Pleading Code,[7] 12 O.S.Supp.1984 § 2001 et seq., the time within which an action was deemed commenced for limitation purposes was defined by 12 O.S.1981 § 97.[8] Because § 97 required that the defendant be served with summons in order to commence an action, the savings provision of § 100 could not be invoked to extend the running of a statute of limitations in an action in which

---

**5.** Statutes like 12 O.S.1981 § 100, see note 1, supra, are variously referred to as savings provisions, renewal statutes, or recommencement-of-actions provisions. *Wiley Elec., Inc. v. Brantley,* 760 P.2d 182, 184 (Okla.1988); *Matter of Estate of Speake,* 743 P.2d 648–49 (Okla.1987).

**6.** We note that this issue was not presented to the trial court. Issues of constitutionality generally must be raised in the trial court to be reviewable upon appeal. See, *Bane v. Anderson, Bryant & Co.,* 786 P.2d 1230, 1237 (Okla.1989); *Ring v. Public Serv. Co.,* 775 P.2d 1356, 1358 (Okla.1989). However, lack of due process claims are an exception to the general rule that issues not presented to the trial court will not be considered on appeal. *Pettit v. American Nat'l Bank,* 649 P.2d 525, 529 (Okla.1982).

The Okla. Const. art. 2, § 7 provides:
"No person shall be deprived of life, liberty, or property, without due process of law."
United States Const. amend. 5 provides in pertinent part:
"No person shall be ... deprived of life, liberty, or property, without due process of law ..."
United States Const. amend. 14, § 1 provides in pertinent part:
"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**7.** Title 12 O.S.Supp.1984 § 2001 provides:

"The Oklahoma Pleading Code governs the procedure in the district courts of Oklahoma in all suits of a civil nature whether cognizable as cases at law or in equity except where a statute specifies a different procedure. It shall be construed to secure the just, speedy, and inexpensive determination of every action. This act may be cited as the 'Oklahoma Pleading Code'. Section captions are part of this act."
Section 2001 was amended effective November 1, 1985. The statute remains identical to its 1984 counterpart except that it provides that sections 2001 through 2027 are to be cited as the Oklahoma Pleading Code.

**8.** *Kile v. Cotner,* 415 P.2d 961–62 (Okla.1966); Title 12 O.S.1981 § 97 provides:
"An action shall be deemed commenced, within the meaning of this article, as to each defendant, at the date of the summons which is served on him or on a codefendant, who is a joint contractor or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons, or if service is sought to be procured by mailing, by a receipt of certified mail containing summons, within sixty (60) days."

service had not been accomplished.[9] Section 97 was repealed in 1984 and replaced by 12 O.S.Supp.1984 § 2003. It provides:

"A civil action is commenced by filing a petition with the court." Unlike its statutory forerunner—§ 97—service need not be obtained to commence a civil action [10] pursuant to § 2003. The action is commenced by filing a petition with the court.[11]

■ The savings clause of 12 O.S.1981 § 100 is applicable to lawsuits timely filed and later dismissed on grounds unrelated to the merits of the controversy.[12] Because of its remedial nature, § 100's provisions are to be liberally construed.[13] The cardinal rule of statutory construction is a determination of legislative intent. However, where the Legislature has plainly expressed itself, there is no need for judicial interpretation.[14] The language of § 100 is unambiguous in stating the actions to which it applies—"any action commenced within due time". Because an action is "commenced" pursuant to § 2003 by filing a petition in the trial court, service need not be obtained in an original action in order to avail a party of the savings provision of § 100.

Our finding that an action dismissed without prejudice in which the defendants have not been served with summons may be refiled within one year of the dismissal pursuant to the savings clause of 12 O.S. 1981 § 100 is supported by the Committee

9. *C & C Tile Co. v. Independent School Dist No. 7*, 503 P.2d 554, 558 (Okla.1972); *Myers v. Kansas, Okla. & Gulf Ry. Co.*, 200 Okl. 676, 199 P.2d 600, 602 (1948). But see, *Meshek v. Cordes*, 164 Okl. 40, 22 P.2d 921, 925 (1933) (Failure of action due to irregular and defective service, quashing of service of summons, want of jurisdiction, and dismissal without prejudice for failure to pay costs constitutes "failure otherwise than on the merits" within meaning of the recommencement-of-actions statute.).

Oklahoma received its recommencement-of-actions provision, 12 O.S.1981 § 100, see note 1, supra, from the laws of Kansas. *Matter of Estate of Speake*, see note 5 at 650, supra; *Amsden v. Johnson*, 74 Okl. 295, 158 P. 1148–49 (1916). In *O'Neil v. Eppler*, 99 Kan. 493, 162 P. 311–312 (1917), the Kansas Supreme Court found that its statutory savings clause was not applicable in a case in which a bill of particulars had been filed but no service was obtained. This decision is not binding on our construction of Oklahoma's savings provision for two reasons: 1) The *O'Neil* decision was rendered after adoption of § 100 by the Legislature and, at best, may be considered persuasive authority. *Valley Vista Dev. Corp. v. City of Broken Arrow*, 766 P.2d 344, 349 (Okla.1988); *In re Fletcher's Estate*, 308 P.2d 304, 311–12 (Okla.1957); and 2) In rendering the decision, the *O'Neil* court relied on the then operative Kansas commencement statute, which, like 12 O.S.1981 § 97, see note 8, supra, provided that an action would be deemed commenced upon service of the defendant. Legislative process, like that undertaken by the enactment of 12 O.S.Supp.1984 § 2003, see this note, infra, affords an effective means for departure from even the binding force of a sister states' judicial interpretation. Matter of *Estate of Speake*, see note 5 at 650, supra.

Title 12 O.S.Supp.1984 § 2003 provides:
"A civil action is commenced by filing a petition with the court."

10. Title 12 O.S.Supp.1984 § 2002 provides:
"There shall be one form of action to be known as 'civil action'."

11. *Buckner v. General Motors Corp.*, 760 P.2d 803, 809 (Okla.1988); Title 12 O.S.Supp.1984 § 2003, see note 9, supra.

C. Adams, "Highlights of Changes Made by the Oklahoma Pleading Code," 55 O.B.J. 1875 (1984).
"... Probably the most important change involving service of process is that commencement of an action no longer will depend on service of the summons. Instead, an action will be commenced when the petition is filed with the court...."

G. Fraser, "Pleading Under the New Oklahoma Code," 55 O.B.J. 1866 (1984).
"... Section 2003 of the Oklahoma Pleading Code provides that an action is commenced by filing a petition with the court; the issuance of a summons is not a prerequisite to the commencement of an action...."

12. *Matter of Estate of Speake*, see note 5 at 650, supra.

13. *Dumas v. United States*, 103 F.2d 676, 679 (10th Cir.1939); *Valley Vista Dev. Corp. v. City of Broken Arrow*, see note 9, supra; *C & C Tile Co. v. Independent School Dist. No. 7*, see note 9 at 559, supra.

14. *Valley Vista Dev. v. City of Broken Arrow*, see note 9, supra; *Northwest Datsun v. Oklahoma Motor Vehicle Comm'n*, 736 P.2d 516, 519 (Okla. 1987).

Comment to § 2003.[15] The comments, which recognize that § 2003 altered Oklahoma law, provide that the change was made in order to add *needed certainty by making the date of filing of the petition the date of commencement of the action for all purposes, including application of the statute of limitations.*[16] Section 100 is but an extension of the statutorily established limitations period.[17] Although the comments are not binding, they are helpful in clarifying that an action is "commenced" pursuant to 12 O.S.Supp.1984 § 2003[18] and 12 O.S.1981 § 100[19] by filing a petition with the court.[20]

### B.

*Because the cause of action was not barred, no constitutionally protectable interest in the statute of limitations arose.*

■ Bridgestone/Firestone asserts that the application of § 100's savings provision to a cause voluntarily dismissed without notice to the defending party violates due process under the Oklahoma[21] and United States Constitutions.[22] The manufacturers argue that dismissal of the original cause without notice affected a property interest in the limitations defense. Ross contends that no property interests arise from 12 O.S.1981 § 100,[23] a general statute of limitation.[24]

The shelter provided by statutes of limitation has never been considered a fundamental right.[25] The United States Supreme Court recognized in *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 485–487, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565, 575–76 (1988) that a cause of action may be an intangible property interest protected by the fourteenth amendment. However, the Supreme Court also espoused that the mere running of a general statute of limitation normally is insufficient to implicate due process and that the state's limited involvement in the running of the time period usually falls short of constituting the type of state action required to implicate fourteenth amendment

---

15. Committee Comment to § 2003, 12 O.S.Supp. 1984, provides in pertinent part:

   "This section simplifies the determination of when an action is commenced. Under former Okla.Stat. tit. 12, § 151 (1981), an action was deemed commenced upon the filing of a petition and issuance of summons by the clerk.... For the purpose of applying a statute of limitation, however, an action was deemed commenced as to each defendant when the summons was served upon him. Okla.Stat. tit. 12, § 97 (1981).... Section 2003 changes Oklahoma law and adds needed certainty by making the date of filing of the petition the date of commencement of the action for all purposes, including application of the statute of limitations...."

16. See also, *Mott v. Carlson,* 786 P.2d 1247–48 (Okla.1990).

17. *Matter of Estate of Speake,* see note 5 at 653, supra.

18. Title 12 O.S.Supp.1984 § 2003, see note 9, supra.

19. Title 12 O.S.1981 § 100, see note 1, supra.

20. *Vinyard v. Smith,* 810 P.2d 832–33 (Okla.Ct. App.1991). See also, *G.S. v. Ewing,* 786 P.2d 65, 69 (Okla.1990) (Official comments to the Uniform Child Custody Jurisdiction Act referred to in determining appropriate jurisdiction to hear child custody dispute.); *State ex rel. Day v. Southwest Mineral Energy, Inc.,* 617 P.2d 1334, 1339 (Okla.1980) (Official Comment's in the Draftsmen's commentary to the Uniform Securities Act relied upon to determine that the interpretative history of the federal act was intended to be carried over into the state act when the Uniform Securities Act was patterned after the federal statutes.).

21. The Okla. Const. art. 2, § 7, see note 6, supra.

22. United States Const. amend. 5, see note 6, supra; United States Const. amend. 14, see note 6, supra.

23. Title 12 O.S.1981 § 100, see note 1, supra.

24. *Matter of Estate of Speake,* see note 5 at 652–53, supra; 12 O.S.1981 § 100, see note 1, supra.

25. *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635 (1945).

protections. Section 100 is a general statute of limitations.[26] It presents no conflict with art. 5, § 46's [27] prohibition against a special statute of limitation. Even a lifting of the statutes' bar may not be a per se offense against the Fourteenth Amendment.[28] Generally, statutes of limitation are procedural rather than substantive. No rights vest in them until a claim is barred by the governing statutory provision.[29] Section 100 operates to extend the applicable statutory limitation. It serves solely to enlarge the time for the pursuit of a remedy *that otherwise would be barred.*[30] Because the savings provision of § 100 operated to extend the period within which Ross could pursue his cause, the claim was not barred by the running of the applicable statute of limitations. To invoke constitutional protections, protectable property interests must exist apart from procedural guarantees.[31] No constitutionally protectable right ever arose in Bridgestone/Firestone.

## CONCLUSION

We recognize that the purpose of a statute of limitations is to ensure that a party has notice of a claim against him/her within a statutory period of time and an adequate opportunity to prepare his/her case.[32] However, § 100 was enacted to avoid the harsh results flowing from the general rule that where an action fails and the statute of limitations has expired during the interim, any subsequent action is untimely.[33] Its protections extend to a party who timely files a case and later dismisses the cause without prejudice and without having served the defendant with summons in the original cause.[34] Because no interest in a statute of limitation ever arose, there has been no constitutional deprivation.[35] The cause is remanded for further proceedings not inconsistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; CAUSE REMANDED.**

HODGES, V.C.J., and DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, C.J., and LAVENDER and SIMMS, JJ., dissent.

OPALA, Chief Justice, with whom LAVENDER and SIMMS, Justices, join, dissenting.

The court pronounces today that under the currently effective pleading code [1] the

**26.** *Matter of Estate of Speake,* see note 5 at 652–53, supra.

**27.** The Okla. Const. art. 5, § 46 provides in pertinent part:
"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
... For limitation of civil or criminal action ..."

**28.** *International Union v. Robbins & Myers, Inc.,* 429 U.S. 229, 243–44, 97 S.Ct. 441, 450, 50 L.Ed.2d 427, 439 (1976). United States Const. amend. 14, § 1, see note 6, supra.

**29.** *Trinity Broadcasting Corp. v. Leeco Oil Co.,* 692 P.2d 1364, 1366 (Okla.1984).

**30.** *Matter of Estate of Speake,* see note 5 at 653, supra.

**31.** *Eftekhara v. Illinois Dept.,* 661 F.Supp. 522, 527 (N.D.Ill.1987). See also, *Kramer v. Piper Aircraft Corp.,* 868 F.2d 1538, 1541 (11th Cir. 1989) (An argument alleging a vested property interest in a statute of limitations must rely on the proposition that there has been a final determination that a claim is barred. No constitutional prohibition exists against applying an extended statute of limitations to a cause not previously barred.).

**32.** *Chandler v. Denton,* 741 P.2d 855, 861 (Okla. 1987); *C & C Tile Co. v. Independent School Dist. No. 7,* see note 9 at 559.

**33.** *Valley Vista Dev. Corp. v. City of Broken Arrow,* see note 9, supra; Annot., "Statute Permitting New Action After Failure of Original Action Commenced Within Period of Limitation, as Applicable in Cases Where Original Action Failed for Lack of Jurisdiction," 6 A.L.R.3d 1043, 1046 (1966).

**34.** See, *Mott v. Carlson,* see note 16, supra.

**35.** *Trinity Broadcasting Corp. v. Leeco Oil Co.,* see note 29, supra.

**1.** 12 O.S.Supp.1984 §§ 2001 et seq.

one-year savings provision in 12 O.S.1981 § 100 [2] may operate to extend the two-year limitation period prescribed by 12 O.S.1981 § 95 [3] for the commencement of an action in tort, even though the plaintiff's voluntary dismissal "without prejudice" of the earlier action had been effected *before* process was served. I must recede from today's pronouncement. Voluntary dismissal before process issues is in my view but a *unilateral withdrawal of the plaintiff's claim* which does not constitute a "failure of the action otherwise than on the merits" [4] within the meaning of the key phrase in § 100. Even if § 100 were available for invocation against one previously unserved, extending its benefit in this case would violate the defendant's basic due process guarantee. An unserved defendant would not have been aware that a dismissal had in fact occurred and that the limitations period thus came to be extended. Moreover,

today's construction of § 100 offends the uniformity-of-procedure mandate found in Art. 5 §§ 46 and 59, Okl. Const. [5]

## I

### AN ACTION CANNOT FAIL, WITHIN THE MEANING OF 12 O.S.1981 § 100, ON AN ISSUE *DEHORS* THE MERITS BEFORE AN ADVERSARY PROCEEDING BEGINS

Section 100 is identical in purpose and in form to its English prototype, the English Limitations Act of 1623. [6] In the common-law sense and under the English statute, the commencement of an action occurred when the adversary process began upon *service of writ.* [7] If the first action failed on grounds unrelated to the merits of the controversy, the plaintiff was permitted to sue out a new writ—known as "journey's account". [8] Every condition the prototype

---

**2.** The terms of 12 O.S.1981 § 100, variously called the "savings", "recommencement-of-action" or "renewal" statute, provide:

"If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if *the plaintiff fail in such action otherwise than upon the merits*, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed." (Emphasis mine.)

**3.** The terms of 12 O.S.1981 § 95 provide in pertinent part:

"Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

\*　　\*　　\*　　\*　　\*　　\*

... Third. Within two (2) years: ... an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated...."

**4.** *See* italicized language in § 100, *supra* note 2.

**5.** For the pertinent terms of Art. 5 §§ 46 and 59, Okl. Const., *see infra* notes 19 and 20.

**6.** 21 Jac. I, c. 16 § 4. The English Limitations Statute provides in pertinent part:

"If in any the said actions or suits, judgment be given for the plaintiff, and the same be

reversed by error, or a verdict pass for the plaintiff, and upon matter alleged in arrest of judgment, the *judgment be given against the plaintiff, that he take nothing by his plaint, writ or bill;* or if any of the said *actions shall be brought by original,* and the defendant therein be outlawed, and shall after reverse the outlawry; that in all such cases the party plaintiff, his heirs, executors or administrators, as the case shall require, may *commence a new action or suit, from time to time, within a year* after such judgment reversed, or such given against the plaintiff, or outlawry reversed, and not after." (Emphasis added.) *See Gaines v. City of New York*, 215 N.Y. 533, 109 N.E. 594, 595–596 (1915); *see also Edmison v. Crutsinger*, 165 Okl. 252, 25 P.2d 1103, 1109 (1933); *Matter of Estate of Speake*, Okl., 743 P.2d 648, 650 (1987).

**7.** No writ could be brought by journey's account (known as a "new writ", *see infra* note 8) *"but where the first writ is served, and returned of record."* (Emphasis mine.) *Spencer's Case*, 6 Coke 10 (1595).

**8.** The purpose of the "journey's account" was to allow a reasonable time for a "journey" to court to sue out a writ. *Matter of Estate of Speake, supra* note 6; *English v. T.H. Rogers Lumber Co.*, 68 Okl. 238, 173 P. 1046, 1048 (1918); *see also Baker v. Cohn*, 266 App.Div. 236, 41 N.Y.S.2d 765, 767 (1943); *Jackson v. Prairie Oil & Gas Co.*, 115 Kan. 386, 222 P. 1114, 1115

statute[9] exacted for recommencement dealt with those stages of litigation in which the parties stood vis-a-vis each other in an adversary posture. Justice Cordozo, who traced in *Gaines v. City of New York*[10] the history of the New York savings statute to the 1623 Act, noted: the *"important consideration [of the statute] is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts."*[11] In short, under the prototype statute no action could ever fail on an issue *dehors* the merits *before an adversary stage was actually set in motion.*

The Oklahoma legislature carried the adversary scheme of the English act into our own savings statute. When § 100 was drafted as part of the Field Code, "commencement" of an action meant *proceedings after service of process.*[12] A plaintiff had one year to recommence an earlier, timely-brought action that had failed on an issue *dehors* the merits.[13] Under the 1984 Pleading Code[14] an action is now deemed to commence when the petition is filed.[15] Service of process no longer marks an action's beginning.

The precise question we must answer is whether, under the currently effective pleading regime, § 100 is invocable to extend the time to bring a claim when in the earlier, voluntarily dismissed action, no service ever issued upon the defendant. I would answer this question in the negative. There is no indication the legislature intended to depart from the adversary posture requirement historically built into the text of § 100. Though I could find none, even if there were some textually demonstrable proof of legislative design to abandon, at the Pleading Code's adoption, the pre–1984 recommencement-of-suit scheme, the crowning principle which must guide our course today should be the one which teaches that when a judicial interpretation of some legislative act will result in a fundamental-law infirmity, but another construction of the same text would avoid both uncertainty and offense to some constitutional principle, *it is the duty of this court to give the enactment that meaning which will make the statute free from constitutional doubt.*[16]

Today's construction of § 100 clearly offends the defendant's due process. This is

(1924); *Hodges v. Home Ins. Co. of New York,* 233 N.C. 289, 63 S.E.2d 819, 820 (1951).

9. English Limitations act, *supra* note 6.

10. *Supra* note 6, 109 N.E. at 596.

11. *Gaines v. City of New York, supra* note 6, 109 N.E. at 596 (emphasis mine).

12. Before the enactment of the 1984 Pleading Code (12 O.S.Supp.1984 §§ 2001 et seq.), the terms of 12 O.S.1981 § 97 (repealed by Okl.Sess. L.1984, ch. 164, § 32) provided that an action is deemed commenced when a defendant is served with summons. The terms of 12 O.S.1981 § 97 provided in pertinent part:
"*An action shall be deemed commenced, within the meaning of this article [§§ 91 et seq., which includes § 100], as to each defendant, at the date of the summons which is served on him* ... An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the ...

service of the summons ... within sixty (60) days. (Emphasis mine.)
See *C & C Tile Co. v. Independent Sch. D. No. 7 of Tulsa Cty.,* Okl., 503 P.2d 554, 559 (1972); *Kile v. Cotner,* Okl., 415 P.2d 961, 962 (1966). In *C & C Tile* the court held "[a]n action is deemed commenced under this statute [§ 97 and § 100] when the plaintiff properly endeavors to procure service on defendant, provided that such attempt is followed by service of summons on defendant within sixty days."

13. *Matter of Estate of Speake, supra* note 6 at 650.

14. 12 O.S.Supp.1984 §§ 2001 et seq.

15. 12 O.S.Supp.1984 § 2002.

16. See *Special Indemnity Fund v. Dailey,* Okl., 272 P.2d 395 (1954) (the court's syllabus ¶ 1); *Earl v. Tulsa County Dist. Court,* Okl., 606 P.2d 545, 547–548 (1980); *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 (1979); *Chicago, R.I. & P. Ry. Co. v. Beatty,* 34 Okl. 321, 118 P. 367 (1911) (the court's syllabus ¶ 2).

so because the court allows the § 100 one-year period to run from a point *unknown and unknowable* to one for whom no process ever issued in the earlier suit. A person never served with process could not be aware that the time bar which began running with a claim's accrual came to be extended by a lawsuit's dismissal of which one had no notice. The *only* construction that would make § 100 free from constitutional doubt is that which would regard the earlier action's voluntary dismissal (before issuance of process) as a *plaintiff's unilateral withdrawal* of the claim rather than as the action's failure "otherwise than on the merits."

## II

### TODAY'S EXTENSION OF THE TWO–YEAR LIMITATIONS PERIOD BY INTERPOSITION OF § 100's SAVINGS PROVISION IS VIOLATIVE OF DEFENDANT'S DUE PROCESS

Ordinary common-law limitations do not offend the due process requirement for notice to the adversary because (a) the triggering date—when the claim accrues—is known or knowable to the affected persons and (b) the point when the statutory time lapses (or "runs out") is both ascertainable and readily calculable. Personal notice of a time bar that extinguishes one's remedy is constitutionally unnecessary *if* the statute of limitations is *self-executing.* "Self-execution" is a gauge by which the U.S. Supreme Court measures a time bar's constitutional conformity to the due process standards that govern notice.[17] The key component of a "self-executing limitation" is the adversely affected person's awareness of *the exact point when the period begins to run.* Once the triggering point is known or knowable, the limitation runs in a *self-executing* manner until the full period comes to an end. The remedy comes to be extinguished without the necessity for notice to anyone whom it might have adversely affected.

Due process demands that the adversely affected person be unambiguously informed of the event that triggers the time within which suit must be brought.[18] Here, the two-year limitations period came to be triggered by the tortious event. The time to bring the action thus ran from a readily ascertainable accrual of the claim until the end of the statute-prescribed period. In stark contrast to this procedure, the triggering event for invoking § 100's benefit—the claim's voluntary dismissal before issuance of process—was unknown and

17. *See* in this connection the Court's reasoning in *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). In *Texaco,* the Court upheld, against the Due Process challenge, an Indiana statute providing that severed mineral interests, which had not been used for a period of 20 years, lapsed and reverted to the surface owner unless the mineral owner filed a statement of claim in the appropriate county office. The 2–year grace period provided by the statute—in which mineral interest owners could prevent their interests from lapsing by filing a claim—was deemed sufficient to allow property owners to familiarize themselves with the statute and to comply with its terms. The Court reiterated the rule that persons owning property within a state are *charged with knowledge* of relevant statutory provisions affecting the control or disposition of such property. *Given this presumed knowledge, the mineral interest owners had no constitutional right to be advised of the impending lapse of their mineral interest.*

In *Pope* the Court held unconstitutional the Oklahoma nonclaim statute which then provided that a creditor's claim against a decedent's estate is barred if not presented within two months of the publication of notice to creditors. The Court used the "self-executing" terminology to distinguish (1) a limitation that runs in a self-executing manner (as in *Texaco*) without requiring any notice to an affected person from (2) a time period that cannot begin to run without special notice to persons known to be adversely affected.

18. A statute of limitations is "designed to ensure that a party has notice of a claim against him within a statutory period of time and an adequate opportunity to prepare his case before potential evidence is lost or becomes stale." *Chandler v. Denton,* Okl., 741 P.2d 855, 863 (1987); *see also C & C Tile Co. v. Independent Sch. D. No. 7 of Tulsa Cty., supra* note 12 at 559.

well-nigh unknowable to the unserved defendant. It is for this reason that § 100 will not pass constitutional muster as a self-executing extension of the governing statute of limitations when it is set in motion by an event that is clearly beyond the affected person's awareness.

## III

TODAY'S COURT CONSTRUCTION OF § 100 CREATES A PRACTICE REGIME THAT SUBJECTS TO UNEQUAL TREATMENT TWO DISTINCT CLASSES OF DEFENDANTS AND THUS OFFENDS THE CONSTITUTIONAL MANDATE FOR PROCEDURAL UNIFORMITY

By holding today that a plaintiff may bring a new action under § 100 without having ever given the defendant notice of the earlier action's dismissal, the court gives the savings statute a construction that offends *both* the constitutional prohibition against "special" laws in Art. 5 § 46, Okl. Const.,[19] and the Art. 5 § 59's mandate for the uniform application of general laws.[20] The relevant terms of § 46 *expressly prohibit* the enactment of *"any local or special law"*[21] either for *"[r]egulating the practice ... in judicial proceedings"* or *"[f]or limitation of civil ... actions."* (Emphasis added.) A statute

violates § 46 when it "targets for different treatment less than an entire class of similarly situated persons or things."[22] Although the text of § 100 does not appear to contravene § 46, its statutory construction today does create a fundamental-law infirmity.

The court fails to differentiate the position occupied by those defendants who had received notice of the earlier action from that of those who had not. Section 100 is "self-executing"[23] *only vis-a-vis the defendants actually served in the earlier action.* For them the time bar begins to run at a point *known and knowable to all.* A defendant notified of the initial action's dismissal "otherwise than on the merits" is charged with knowledge—equal to that of the plaintiff—of the time bar extension for the action's commencement. As for the unserved defendants who comprise the other distinct class, § 100 is far from self-executing. Because the latter persons are given no notice of the first action's termination, they would not be aware that the earlier suit's failure occurred under circumstances that could make § 100 available for invocation. These defendants obviously stand disadvantaged by their subjection to the same procedural regime under § 100 as the defendants who had been served. In short, *the construction the court places today upon the text of § 100 prevents that statute from operating fairly upon two*

---

19. The pertinent terms of Art. 5 § 46, Okl. Const., provide:

    "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

    \*   \*   \*   \*   \*   \*

    *Regulating the practice* or jurisdiction of, or changing the rules of evidence *in judicial proceedings or inquiry before the courts,* justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals ...;"

    \*   \*   \*   \*   \*   \*

    *For limitation of civil* or criminal *actions;* \* \* \*" (Emphasis added.)

20. The terms of Art. 5 § 59, Okl. Const., provide: "Laws of a general nature *shall have a uniform operation throughout the State,* and where a general law can be made applicable, no special law shall be enacted." (Emphasis added.)

21. Special laws do not operate uniformly. They apply to less than an entire class of similarly situated persons; those singled out by the law receive treatment which differs from that received by the remainder of the class. *Reynolds v. Porter,* Okl., 760 P.2d 816, 822 (1988); *Maule v. Independent School Dist. No. 9,* Okl., 714 P.2d 198, 203 n. 30 (1985). *See also Ind. School Dist. v. Okl. City Fed. of Tchrs.,* Okl., 612 P.2d 719, 725–726 (1980) (Opala, J., dissenting).

22. *Reynolds v. Porter, supra* note 21 at 823.

23. For a detailed explanation of the concept of a "self-executing" statute see Part II of this opinion.

*distinct classes of defendants.*[24]

In *Maule v. Independent School Dist. No. 9*[25] this court had occasion to choose between construing the statute there under review in a manner consistent with Art. 5 § 46 or interpreting the act in a way that would have resulted in disparate treatment for less than an entire class. The court rejected the latter alternative to avoid "[u]nequal application" of the statute.[26] Similarly here, I would today construe § 100 in accordance with the uniformity-of-procedure mandates of Art. 5 §§ 46 and 59, Okl. Const., and hold that § 100 does not avail to extend the statutory time bar to bring a claim against a defendant unserved in the earlier action.[27]

## SUMMARY

*There is no textually demonstrable support for the court's conclusion that, with the enactment of the 1984 Pleading Code, the legislature intended to make § 100 invocable against defendants who were not served in the earlier action.* The court's opinion places the common-law concept of limitations on a collision course with the due process standards for notice. Today's construction of § 100, which imposes an unfair procedural regime on defendants unserved in the earlier action, offends the express terms of Art. 5 §§ 46 and 59, Okl. Const.[28] The cited fundamental-law provisions condemn as a constitutionally prohibited "special act" that legislation which gives like procedural treatment to distinctly different classes of dissimilarly situated persons. Served and unserved defendants in the earlier suit *do not comprise a single class* for application of § 100.[29] They may not be governed by the same norms of procedure without contravening the uniformity clauses of §§ 46 and 59.

I would avoid the constitutional collision course that confronts us today by holding that § 100 is not invocable by a plaintiff who voluntarily dismissed an earlier suit against an unserved defendant.

**24.** See *City of Tulsa v. McIntosh*, 141 Okl. 220, 284 P. 875, 877 (1930) ("limitations on all civil and criminal actions should be uniform throughout the state"); *Barrett v. Board of Com'rs of Tulsa County*, 185 Okl. 111, 90 P.2d 442, 443 (1939) (the court's syllabus ¶ 3) ("special laws ... create preference and establish inequality").

**25.** *Supra* note 21.

**26.** *Maule v. Independent School Dist. No. 9*, *supra* note 21 at 203–204. In *Maule*, the court dealt with two classes of teachers—one comprised of members from districts with an average daily attendance of 35,000 or more and the other included teachers from the smaller districts. Although the statute there in suit, 70 O.S.Supp.1982 § 509.2, required a secret ballot election for choosing the bargaining representative for teachers in the first class *alone*, it was *silent* regarding the procedure to be followed in the other districts. The question was whether *both* classes were subject to the procedure mandated by § 509.2. The court filled the gap left by legislative silence and answered this question in the affirmative to avoid the statute's "[u]nequal application" which would have contravened Art. 5 § 46, Okl. Const.

**27.** See *Reynolds v. Porter*, *supra* note 21 at 824; *City of Tulsa v. Macura*, 186 Okl. 674, 100 P.2d 269, 270 (1940) (the court's syllabus ¶ 3); *Barrett v. Board of Com'rs of Tulsa County*, *supra* note 24 at 446–447; *City of Tulsa v. McIntosh*, *supra* note 24 at 875 (the court's syllabus ¶ 2). See also *Sisson by and through Allen v. Elkins*, Okl., 801 P.2d 722, 728–729 (1990) (Opala, V.C.J., concurring in judgment); *Elam v. Workers' Compensation Court of State*, Okl., 659 P.2d 938, 941–942 (1983) (Opala, J., dissenting).

**28.** For the pertinent terms of Art. 5 §§ 46 and 59, see *supra* notes 19 and 20, respectively.

**29.** An act with a procedural regime that reaches out to affect a *distinct class* is *overinclusive* within the meaning of § 46 strictures. This is the flaw I ascribe in my dissent to today's § 100 court construction. On the other hand, when a statute's *sweep embraces not more but less than a whole class, it is underinclusive* in the § 46 sense. For a detailed explanation of the latter § 46 classification flaw *see Reynolds v. Porter*, *supra* note 21.