2006 OK 22

**Robert Mark JERNIGAN, Personal Representative of the Estate of Rose Marie Jernigan, Plaintiff/Appellant,**

v.

**Jana H. JERNIGAN, Defendant/Appellee.**

No. 101,594.

Supreme Court of Oklahoma.

April 18, 2006.

William H. Sullivan, Oklahoma City, OK, for Appellant.

Tsinena Bruno, Miller Dollarhide, Oklahoma City, OK, for Appellee.[1]

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

OPALA, J.

¶ 1 The certiorari quest presents for our decision four questions: (1) Did the Court of Civil Appeals err when it undertook *sua sponte* to review the remediability of this replevin action in the probate division of the district court? (2) Where as here one in legal possession of decedent's personalty made a gift to a third party who was without knowledge of any defect in title, did the trial court err in allowing a replevin action against that third party for recovery of the property to proceed in probate? (3) Is the executed agreement among the heirs who divided decedent's personalty subject to forensic rescission in this cause based on mutual mistake of fact? (4) Did the trial court err in awarding an attorney's fee to the successful party in replevin?

¶ 2 We answer the first question in the affirmative and the second through fourth questions in the negative.

## I

## THE ANATOMY OF LITIGATION

¶ 3 Rose Marie Jernigan died on 5 January 1996, leaving three sons, Robert Mark Jernigan, Stephen A. Jernigan and James B. Jernigan, and one daughter, Janet J. Bradley. Decedent's husband had predeceased her by nearly five weeks. The majority of their property had been placed in the Jernigan Family Limited Partnership. Decedent's estate consists solely of personalty. Rather than bring a probate the heirs agreed to distribute that personalty among themselves. Eight years later, on 30 January 2004, Robert Mark Jernigan (personal representative or plaintiff) initiated a proceeding to probate the estate of Rose Marie Jernigan. Her will was admitted to probate and he was appointed personal representative.

¶ 4 Shortly before the probate was filed Jana H. Jernigan, wife of James B. Jernigan (wife or donee), had commenced divorce proceedings against James B. Jernigan (husband or donor), one of the decedent's sons. In the divorce case the wife claimed as her separate property several items of jewelry, which included that which she had received as a gift from her husband during the marriage. Some of that jewelry had belonged to the decedent mother and was in a bag which he brought home with him in 1996 after the heirs had divided the decedent's personalty.

¶ 5 The personal representative **brought in probate a replevin action against the divorcing wife for the return of the decedent's jewelry then in her possession.** He alleged that (a) the decedent's 1981 will left to her daughter and two granddaughters all of her jewelry; (b) on the date of her death the jewelry was placed in the possession of her son, James B. Jernigan, for safekeeping; (c) the wife had wrongfully taken possession of the jewelry, which she was claiming as her separate asset in the then-pending divorce proceedings, and (d) the wife was wrongfully detaining the jewelry from the estate.

¶ 6 The wife moved for summary judgment. She argued the representative's replevin targets no estate assets. This is so because all the decedent's property was either owned by the Jernigan Family Limited Partnership or was voluntarily divided among the Jernigan heirs following the decedent's death. She contended the representative and the decedent's daughter should be estopped from laying claim to the jewelry because no one had asserted an adverse interest in that asset since its distribution eight years earlier.[2]

¶ 7 The personal representative claimed that whether the jewelry in contest is an

**2.** The wife raised other issues relating to the representative's failure to comply with certain probate and replevin statutes. She argued the representative's letters testamentary should be revoked for failure to comply with certain probate statutes. According to the wife the personal representative (a) had failed to file either an inventory of the estate or an accounting or appraisement and (b) had not taken into his possession any of the personal property that could be considered part of the estate. She claimed that

he failed to comply with the terms of 12 O.S.Supp.2002 § 157(A)(1), which require that a value be assigned to each article of property sought to be recovered. She also argued that he failed to comply with the court's scheduling order and should be barred from calling any witnesses or introducing any exhibits at trial. The representative responded by asserting that the wife had no standing as an heir or party to the probate to seek his removal as the representative.

asset of the estate or belongs to the wife—a question for the trier of fact—presents the only issue in the case. He noted that the replevin petition lists 32 items of jewelry claimed as assets of the estate. According to the representative, it was not until the wife filed her jewelry list in the divorce case that he became aware she was claiming the items bequeathed by will to the decedent's daughter and granddaughters. He argued the wife's defense—based on estoppel theory—is meritless since the will was not discovered until January of 2004.[3]

¶ 8 The wife responded that the evidentiary materials in summary process initiated by her indicate the Jernigan heirs knew about the existence of the will. She claimed they voluntarily entered into a family settlement agreement to distribute the personalty in a manner different from that prescribed by law or by the testamentary instrument. According to the wife, because the agreement was a distribution method alternative to the formal administration of a will, the heirs should be required to adhere strictly to the terms of their contract. She further contended the doctrine of laches should be invoked against the estate.

¶ 9 The trial court gave summary judgment to the wife for all the jewelry (which she claimed as her separate property in the divorce case) with the exception of two bracelets that the decedent had bequeathed to her two granddaughters. According to the trial court (a) no facts were in dispute about the heirs' 1996 voluntary division and distribution of decedent's personalty and (b) the heirs' property division and its distribution constitute an enforceable executed family settlement agreement. All other issues before the court were deemed moot. The trial court later awarded an attorney's fee of $29,179.77 to the wife as the successful replevin party.

¶ 10 The representative brought two appeals—from the summary judgment and from the attorney's fee award. He argues in the petition in error that the heirs' 1996 agreement is amenable to rescission for mutual mistake of fact. This is so because the

heirs, when entering into the agreement, did not know about the decedent's will until shortly before the probate was filed. He argues that in probate the court's responsibility is to protect the sanctity of the decedent's will, which provides that a gold charm bracelet is to be given to each of her two granddaughters and the balance of the jewelry to her daughter. The representative contends there has been no opportunity in the trial court for testimony relating to the agreement and that the trial court's summary judgment's legal basis consists of no more than the parties' pleadings and their written assertions.

### *The Court of Civil Appeals' Reversal*

¶ 11 The Court of Civil Appeals (COCA) **reversed** both the summary judgment and the attorney's fee award. COCA raised *sua sponte* the remediability of a replevin suit before the probate division of the district court and concluded that the district court (when sitting in probate) is without "jurisdiction" to entertain a replevin action. The cause was remanded for the trial court's determination of whether an attorney's fee is the wife's due based on the personal representative's bad faith in bringing the replevin suit as part of the probate proceeding.

¶ 12 The wife seeks relief by certiorari, but both parties contend here COCA erred in holding that the trial court was "without jurisdiction" to entertain the replevin action. They argue the "jurisdictional issue" was presented in prejudgment stages to, and correctly decided by, the trial court when it ruled the district court's probate division had "concurrent jurisdiction" to entertain the replevin claim. They urge this court to vacate COCA's opinion upon review of the errors COCA refused to consider on appeal.

### II

### THE STANDARD OF REVIEW FOR APPEALABLE PRODUCTS OF SUMMARY PROCESS

■ ¶ 13 Summary process—a special pretrial procedural track pursued with the

---

**3.** The representative tendered as evidentiary material in the summary process (1) an excerpt of his deposition that was taken on the wife's be-half; (2) the wife's jewelry list submitted in the divorce case; and (3) the application for an order to turn over the jewelry for appraisal.

aid of acceptable probative substitutes [4]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[5] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[6] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for nisi prius resort to summary process for a claim's adjudication.[7]

¶ 14 Summary relief issues stand before us for *de novo* review.[8] All facts and inferences must be viewed in the light most favorable to the non-movant.[9] Just as nisi prius courts are called upon to do, so also appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material received in summary process as support for the relief received by the movant.[10] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.[11]

## III

## THE REMEDIABILITY OF REPLEVIN FILED IN A PROBATE PROCEEDING PRESENTS A MATTER OF INTERNAL ALLOCATION OF DISTRICT–COURT CASELOAD RATHER THAN A JURISDICTIONAL ISSUE AND CANNOT HENCE BE RAISED *SUA SPONTE*

¶ 15 The wife claims that when in prejudgment stages [12] she urged that the trial court, sitting in probate, had no jurisdiction to entertain the replevin action, she was unaware that recent amendments to 58

4. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773. See also *Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

5. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered for elimination of trial reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936.

6. To that end, the **court may consider,** in addition to the pleadings, items such as **depositions, affidavits, admissions, answers to interrogatories,** as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n, supra* note 5, at ¶ 8, at 113; *Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81.

7. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

8. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. See also *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

9. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

10. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

11. It is not the purpose of summary process to substitute a trial by affidavit for one by jury. Rather, it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.*, 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440; *Bowers v. Wimberly*, 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

12. The wife initially raised this issue by objection to the estate's request for delivery of the jewelry.

O.S.2001 § 1[13] had expanded the probate's remedial range. She explains that because the trial court had earlier decided the district court sitting in probate has "concurrent jurisdiction" to determine ownership of property, she did not re-interpose that issue in her summary judgment brief or on appeal.[14] COCA viewed replevin's remediability in probate as a jurisdictional problem and interjected the issue *sua sponte* to raise an insuperable barrier to the probate division's power over the replevin brought against the wife.

¶ 16 While an appellate court is duty-bound to inquire *sua sponte* **into its own jurisdiction** over any pending matter,[15] replevin's remediability in probate presents merely a matter of internal allocation of case-load rather than one of jurisdiction. The district court's subject-matter jurisdiction is derived from the State's constitution.[16] Under its provisions, **the district court—in all of is divisions—constitutes an omnicompetent, single-level, first-instance tribunal**[17] **with "unlimited original jurisdiction of all justiciable matters. . . ."**[18] That broad, constitutionally-conferred jurisdictional sweep is indivisible, even though the court's day-to-day exercise of authority stands carved into several separate divisional compartments.[19]

¶ 17 A probate proceeding moves along a procedural track vastly different from that followed by a regular "action" upon a claim.[20] The latter is governed by the Pleading Code[21] and is regulated by the rules of practice applicable to the ordinary

13. The terms of 58 O.S.2001 § 1(C) provide in pertinent part:

C. The district court which has jurisdiction and venue of the administration of any estate is granted **unlimited concurrent jurisdiction** and venue to hear and determine:

1. **In whom the title to any property is vested,** whether the property is real, personal, tangible, intangible, or any combination thereof;

2. **Rights with respect to such property as to all persons** and entities;

3. **Whether or not such property is subject to the jurisdiction of the court in the decedent's estate;** and * * *
(emphasis added).

14. The wife concedes that the trial court correctly ruled against her on this issue. Although the trial court's prejudgment order is not included in the appellate record, admissions against a party's interest made in a brief will be used to supplement a deficient appellate record. *Kwikset/Emhart v. Mayberry*, 1990 OK 112, ¶ 3, n. 1, 800 P.2d 239, 240; *Reeves v. Agee*, 1989 OK 25, ¶ 15, 769 P.2d 745, 753–54; *Womack v. City of Oklahoma City*, 1986 OK 14, ¶ 10, n. 8, 726 P.2d 1178, 1181.

15. *Stites v. DUIT Const. Co., Inc.*, 1995 OK 69, ¶ 8, n. 10, 903 P.2d 293, 297; *Lincoln Bank and Trust Co. v. Oklahoma Tax Com'n*, 1992 OK 22, ¶ 6, 827 P.2d 1314, 1318; *Cate v. Archon Oil Co., Inc.*, 1985 OK 15, ¶ 10, n. 12, 695 P.2d 1352, 1356; *Pointer v. Hill*, 1975 OK 73, ¶ 14, 536 P.2d 358, 361.

16. The pertinent terms of Art. 7 § 7(a), Okl. Const., are:

" * * * The **District Court shall have unlimited original jurisdiction** of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute. * * * "
(emphasis added).
Pre-1969 district courts were tribunals of general jurisdiction. Art. 7 § 7, Okl. Const. (repealed in 1967, *eff.* Jan. 13, 1969); *Flick v. Crouch*, 1967 OK 131, ¶ 16, 434 P.2d 256, 261. Since 1969 district courts exercise unlimited original jurisdiction of all justiciable matters, except as otherwise provided by the Constitution. Art. 7 § 7, Okl. Const. (eff.Jan.13, 1969); *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 21, 519 P.2d 491, 495.

17. *Eskridge v. Ladd*, 1991 OK 3, 811 P.2d 587 (Opala, C.J., concurring); *Matter of B.C.*, 1988 OK 4, ¶ 3, 749 P.2d 542, 548 (Opala, J., concurring in part and dissenting in part); *Lee v. Hester*, 1982 OK 30, ¶ 6, 642 P.2d 243, 246; *Interstate Brands Corp. v. Stephens*, 1980 OK 121, ¶ 2, 615 P.2d 297, 299 (Opala, J., concurring).

18. Art. 7 § 7(a), Okl. Const., *supra* note 16.

19. The division of the district court's business into separate dockets is authorized by the provisions of 20 O.S.2001 § 91.2, which stand vitalized by this court's administrative directives (SCAD No. 99–87 (16 December 1999), 92–06 (24 December 1992), 89–7 (12 September 1989), 89–1 (31 January 1989), 68–1 (23 December 1968)).

20. Before the Judicial Article of the Oklahoma Constitution (Art. 7 § 1, Okl. Const.) and the provisions of 20 O.S.2001 § 91.1 became effective 13 January 1969, the remedial track for probate had its point of inception in the since-defunct county court. *Wilson v. Kane*, 1993 OK 65, ¶¶ 6–8, 852 P.2d 717, 721–22.

21. 12 O.S.2001 § 2001 *et seq.*

process of adjudication. Although probate now begins and ends in the district court, interdivisional remedial boundaries survive. **They must be accepted as no more than a procedural demarcation line separating different remedial regimes rather than be treated as tightly separated jurisdictional compartments.**

¶ 18 The correct method for challenging the remediability of a claim filed in probate is not by motion to dismiss or by a plea to the jurisdiction, but rather by motion to transfer the cause to another division.[22] All judges of the district court have a constitutionally invested power to transfer cases to another division of the district court on any tenable legal or equitable ground shown at any point in litigation. The district court divisions have equal capacity and power and are restricted only by their statutory remedial range.[23]

¶ 19 **In short, because the early contest over the replevin's remediability in probate is a nonjurisdictional issue that was neither retendered in the summary replevin proceedings nor addressed by the court's summary judgment in replevin, COCA erred in raising it *sua sponte* on appeal.**

## IV

## NO EQUITABLE CLAIM FOR RESCISSION OF THE FAMILY AGREEMENT WAS EVER PRESENTED TO THE TRIAL COURT

### A.

*The Family Settlement Agreement Invested the Matrimonial Donor With Sufficient Indicia of Ownership To Pass*

*Title To The Defendant/Matrimonial Donee.*

¶ 20 Upon the voluntary settlement of decedent's estate in 1996, wife's husband took possession of several items of personalty. According to the wife's affidavit, admitted as evidentiary material in summary process, (a) her husband received from the agreed distribution some art work, furniture, a bag of jewelry, loose gemstones and other items of personalty; (b) over the next eight years he transferred to her from the received bag several items of jewelry and eventually gave her as a gift its entire contents; (c) the wife and her daughter wore the jewelry in the presence of the other Jernigan family members, including the decedent's daughter. In support of summary process the wife tendered the husband's answer to an interrogatory in the divorce case which indicated that several items of personalty had been divided following the decedent's death, in addition to the "distribution ... of jewelry."[24] The wife also tendered in support of her motion for summary judgment the affidavit of her legal counsel in the divorce case. According to that counsel, the wife's husband testified in the divorce proceedings that (a) he gave to his wife the jewelry which he received following the voluntary 1996 distribution of the decedent's personalty, (b) all of his siblings knew he had possession of the jewelry (which is now the subject of the replevin action), (c) his sister had been to his home (where the jewelry was kept) and had seen his wife wearing the jewelry, but had neither made a claim to that asset nor asked that it be given to her and (d) he had also worn jewelry that was distributed to him in 1996 and no one had made a demand that it be returned to his sister.[25]

---

22. *Eskridge v. Ladd,* 1991 OK 3, ¶ 22, 811 P.2d 587, 591–92 (Opala, C.J., concurring).

23. *See, e.g., Wilson v. Kane, supra* note 20.

24. According to the husband's answer to the interrogatory in the divorce case (admitted as evidentiary material in summary process), there was "[n]o probate as all assets were owned by Jernigan Family Limited Partnership (JFLP), created in 1995." He stated that a division of

property following the demise of his parents was undertaken among the heirs, "**including** liquidation of stock, residence, **distribution of** furniture, art work, **jewelry,** guns, coins and personal items." (emphasis added).

25. The wife's counsel stated in the affidavit that a transcript of husband's testimony was not available because the divorce trial had not been completed.

¶ 21 The family settlement agreement, coupled with the other contracting parties' acquiescence in husband's possession of the jewelry for an eight-year period during which his wife wore the jewelry in the presence of the other heirs without their objection, invested him **with the indicia of ownership sufficient to pass title by gift to one without knowledge of any defect in donor's title.**[26] It is undisputed that the husband was in legal possession of the jewelry and that he transferred it by gift to the wife. There is no indication in the record that the wife was aware of any restriction upon her husband's title to, or possession of, the jewelry at the time it was transferred to her by gift or that the husband contested her claim to that property. **The evidentiary material points to the contrary.** On this record we must hence conclude the wife is a *bona fide* (matrimonial) donee of the jewelry.

¶ 22 We accordingly hold there are no triable fact issues in the replevin against the wife. The representative, a stranger to the gift transaction, is estopped to assert an interest in or title to the property conveyed under apparent color of ownership.

### B.

### *The Subsequent Discovery Of A Will Whose Provisions Are Inconsistent With The 1996 Oral Agreement Does Not Affect*

### *The Validity Of The Family Settlement Agreement*

¶ 23 The representative argued on appeal that the family agreement is subject to rescission because it was based on mutual mistake of fact—the heirs' absence of knowledge that the mother left a will. He claimed that at the time the agreement was reached "there was no knowledge of the decedent's last will and testament." He urged that in matters of probate and the administration of estates the court is duty-bound to protect the sanctity of the decedent's will. According to the representative, the trial court erred in ignoring the decedent's will and in basing its summary judgment upon an agreement reached by the heirs, who labored under a mistake of fact. He claims there has been no opportunity for eliciting testimony about the facts relating to this matter and that the trial court's judgment is based merely on pleadings and the parties' assertions.

¶ 24 A family settlement agreement is generally executed between or among parties (with an interest in the decedent's property) for the purpose of distributing the decedent's property in a manner different from that prescribed by law or by testamentary instrument.[27] **Family settlement agreements are favored in law and will ordinarily be upheld when made with a full understanding of facts and without fraud or undue influence.**[28]

---

**26.** See in this connection, *Al's Auto Sales v. Moskowitz*, 1950 OK 94, 224 P.2d 588, 589 syl. 1, 203 Okl. 611, where the court held that an automobile owner, who permits a dealer in automobiles to have a car at his sales place under circumstances that indicate authority to sell, is estopped to assert his title against a *bona fide* purchaser for value without notice of any defect of title. Where the owner has given the seller express power to sell, and the latter does sell while **clothed with the indicia of ownership**, the purchaser takes title. In *A.L. Jepson Mfg. Co. v. Shank*, 1916 OK 43, ¶ 0, syl. 1, 154 P. 516, 54 Okl. 667, the court notes: "The old common-law maxim 'that no one can transfer a better title to a chattel than he himself possesses' must ... be properly qualified and restricted. If the owner has done nothing to clothe the seller with the indicia of title, the maxim is sound. But where the owner has given the seller express power to sell, and he does sell clothed with the indicia of ownership, the purchaser takes title."
It is a general rule of law that no one can confer or transfer a better title than that which he has,

unless some principle of estoppel should operate to bar an otherwise superior claim. *Snethen v. Oklahoma State Union of the Farmers Educational and Co-operative Union of America*, 1983 OK 17, ¶ 13, 664 P.2d 377, 381; *Al's Auto Sales v. Moskowitz, supra*, at 588 syl. 2.

**27.** *Dean v. Jelsma*, 1957 OK 163, ¶ 0, 316 P.2d 599 syl. 5, ¶ 15, 316 P.2d 599, 606; *Dowell v. Dowell*, 1957 OK 212, ¶ 0, syl. 1, 316 P.2d 850.

**28.** "Courts look with favor upon family settlement agreements, as a matter of public policy, and they will ordinarily be upheld when made with full understanding of the facts and without fraud, undue influence, or imposition...." *Dean v. Jelsma, supra* note 27, at ¶ 15, at 606; *Dowell v. Dowell, supra* note 27.
The terms of 15 O.S.2001 § 233 provide in pertinent part:
A party to a contract may rescind the same in the following cases only:
1. If the consent of the party rescinding, or of any party jointly contracting with him, was

*The Equitable Rescission Of The Heirs' Agreement Based On Their Mutual Mistake Of Fact Is An Issue Interposed For The First Time On Appeal*

¶ 25 The wife's summary judgment brief urged the trial court to follow strictly the parties' family settlement agreement executed eight years earlier, by the terms of which the decedent's personality was divided. Although the wife interposed the agreement in summary process to show her chain of title, the representative failed to counter by tendering to the trial judge the defense of equitable rescission based on mutual mistake of fact **either in summary proceedings or by new trial motion.** He now seeks to avoid the effect of that agreement by an argument interposed for the first time in appellate stages of the controversy.

¶ 26 The trial court never had an opportunity in this case to consider whether the representative is entitled to relief by rescission of the settlement contract. Matters not first presented to the trial court are generally excluded from consideration by an appellate forum.[29] Nothing tendered here warrants a deviation from the general rule that bars from review issues raised for the first time by appeal. We must hence accept the **factum of an oral family agreement whose existence is undenied and whose validity stands unchallenged in all the trial court stages.**[30]

¶ 27 We accordingly hold the Jernigan heirs' 1996 oral agreement to distribute all personality in the decedent's estate has not been timely challenged in the trial court for mutual mistake of fact. The matrimonial donor was vested with sufficient indicia of ownership to transfer title by gift to the matrimonial donee who was without knowledge of any infirmity in his title.[31]

### Counsel–Fee Award

¶ 28 The personal representative appealed from the counsel-fee award to the wife claiming that it was based on the flawed "dismissal of the replevin action," meaning that the summary judgment for the wife was legally erroneous. Because we affirm today the nisi prius decision for the wife, the counsel-fee award must also stand.

## V

## SUMMARY

¶ 29 The remediability of replevin suit brought below as a part of the probate proceeding presents a matter of internal allocation of district-court business rather than a jurisdictional issue. It was hence clearly beyond COCA's *sua sponte* reach on its consideration of the representative's appeal.

¶ 30 No claim for rescission of the family settlement agreement was ever interposed in the trial court. The factum and validity of that agreement was established by the wife's evidentiary materials. The agreement invested her then-husband, the matrimonial donor, with sufficient indicia of ownership of

---

given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.   * * *

29. *Vaughan v. City of Broken Arrow,* 1999 OK 47, ¶ 7, n. 1, 981 P.2d 316, 319; *Stonecipher v. District Court of Pittsburg County,* 1998 OK 122, ¶ 11, 970 P.2d 182, 186; *Northwest Datsun v. Oklahoma Motor Vehicle Comm'n,* 1987 OK 31, ¶ 16, 736 P.2d 516, 520 (an issue not presented to the trial court for decision will not be considered for the first time on appeal); *Steiger v. City Nat. Bank of Tulsa,* 1967 OK 41, ¶ 24, 424 P.2d 69, 72. This rule goes hand in hand with the principle that affirmative defenses must be raised by the parties or are waived. *Furr v. Thomas,* 1991 OK 93, ¶ 23, 817 P.2d 1268, 1272–73.

30. Today's pronouncement does not address the validity of the oral family settlement agreement. An agreement of this kind does not relieve the custodian of a will of the duty to deliver that document either to the district court or to the executor within thirty days of the custodian's knowledge of the maker's death. See the provisions of 58 O.S.2001 § 21. Nor may such an oral family settlement agreement be invoked to defeat the court's probate jurisdiction.

31. This court will affirm a correct judgment on any applicable theory. *Bivins v. State ex rel. Oklahoma Memorial Hosp.,* 1996 OK 5, ¶ 22, n. 40, 917 P.2d 456, 465; *Matter of Estate of Maheras,* 1995 OK 40, ¶ 7, n. 6, 897 P.2d 268, 272; *Wright v. Grove Sun Newspaper Corp., Inc.,* 1994 OK 37, ¶ 18, 873 P.2d 983, 992.

the jewelry to pass title to the wife *qua* matrimonial donee who was not shown to have had notice of any infirmities.

¶ 31 The later discovery of decedent's will does not affect the validity of the heirs' prior agreement. The personal representative pressed no legal challenge to the agreement at nisi prius. His appellate plea for equitable rescission, first made on appeal, cannot hence be addressed on review. The issue should have been timely tendered to the trial court.

¶ 32 On certiorari granted upon the personal representative's petition, the Court of Civil Appeals' opinion is vacated; the summary judgment together with an attorney's fee award are affirmed.

¶ 33 WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, EDMONDSON, TAYLOR and COLBERT, JJ., concur.

¶ 34 WATT, C.J., and KAUGER, J., concur in result.

