OSCN Found Document:STATE ex rel. DOAK v. BMSI HOLDINGS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE ex rel. DOAK v. BMSI HOLDINGS
2023 OK CIV APP 43
Case Number: 119910
Decided: 02/10/2023
Mandate Issued: 11/16/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 43, __ P.3d __

 

STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR EAGLE INSURANCE AGENCY HOLDINGS, LLC, Plaintiff/Appellant,
v.
BMSI HOLDINGS, INC., BANKERS MULTISTATE INSURANCE, INC., BANCINSURE, INC., BMSI MARKETING INC., MATTERHORN FINANCIAL SERVICES, INC., BANCINSURE MARKETING SERVICES, INC., BI MANAGEMENT COMPANY, LISA BAYS, CARA BYRNE, BALLARD CASSADY, JAMES CROSS, RUBY ERB, ROBB EVANS, RODMAN FRATES, STEPHEN FRATES, WILLIAM FUNK, WILLIAM JOHNSTONE, MARK KRIENKE, BRUCE LIVINGSTON, CYNTHIA McINERNEY, LESLIE NESVIG, LARRY PARMAN, GALEN PATE, JONATHAN PATE, LYNETTE PARMLEY, PETER PRUDDEN, ERIC SANDBERG, RODNEY SARGENT, FREDERICK SMITH, JAMES WALLIS, and JAMES WORKS, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

AFFIRMED

George E. Gibbs, Caroline M. Shaffer Siex, GIBBS, ARMSTRONG & BOROCHOFF, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant

Gary S. Chilton, Dylan D. Erwin, HOLLADAY, CHILTON & ERWIN, PLLC, Oklahoma City, Oklahoma, for Defendants/Appellees Ballard Cassady, Larry Parman, Eric Sandberg
and Frederick Smith

Michael S. McMillin, FENTON, FENTON, SMITH RENEAU & MOON Oklahoma City, Oklahoma, for Defendant/Appellee Bruce Livingston

Ryan S. Wilson, WILSON LAW FIRM, Oklahoma City, Oklahoma, for Defendants/Appellees Kent Frates as P.R. of the Estate of Rodman Frates, Lisa Bays, Galen Pate, Stephen Frates, Lynette Parmley, Peter Prudden, Robb Evans, James Wallis, Leslie Nesvig, Cara Byrne, William Funk and James Cross

Seth D. Coldiron, GOOLSBY PROCTOR HEEFNER & GIBBS, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee Ryan Sargent, Indep. Ex'r of the Estate of Rodney N. Sargent

Mitchell D. Blackburn, CONNER & WINTERS, LLP, Oklahoma City, Oklahoma, for Defendant/Appellee Mark Krienke

A. Daniel Woska, Farrah Burgess, DEVOL & ASSOCIATES, Edmond, Oklahoma, for Defendant/Appellee Ruby Erb

Ashley L. Powell, HARTZOG CONGER CASON, LLP, Oklahoma City, Oklahoma, and
Drew Neville, McAFEE & TAFT, A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma, for Defendant/Appellee William O. Johnstone

BY STACIE L. HIXON, JUDGE:

¶1 State of Oklahoma ex rel. John Doak, Insurance Commissioner, as Receiver for Eagle Insurance Agency Holdings, LLC, (Receiver) appeals a Final Judgment of September 25, 2021, incorporating interlocutory orders dismissing claims against Defendants or granting summary judgment in favor thereof, and resolving all remaining claims asserted by Receiver in the underlying proceeding. The trial court's judgment memorializes (1) a March 1, 2021 Order dismissing Receiver's claims against the Individual Defendants[1] based on the statute of limitations and failure to state a claim upon which relief may be granted; (2) an August 13, 2021 Order granting Defendant Rodney Sargent's Motion for Summary Judgment based on run of the statute of limitations and failure to state a claim; and (3) its finding that Receiver's claims against the non-appearing corporate Defendants[2] were likewise barred by the statute of limitations on the same basis as the Individual Defendants.

¶2 On review of applicable law, the parties' briefing and the record on appeal, we affirm based on the statute of limitations on slightly different grounds as identified by the trial court. Receiver argues that its claims in this 2016 action were timely under a four-year period provided by the Uniform Insurers Liquidation Act (UILA), 36 O.S.2011, § 1924.1(A)(2). However, to be timely, the one-year savings statute, 12 O.S.2011, § 100, must apply. Receiver voluntarily dismissed a 2015 action against Defendants in 2017, after this action was filed in 2016, accompanied by a unilateral declaration that the 2015 action was "deemed dismissed" for failure to serve process within 180 days. The Court holds this unilateral declaration is ineffective to deem the 2015 action dismissed prior to the filing of the 2016 action and that the savings statute therefore does not apply. Receiver's 2016 suit is untimely, and we affirm the trial court's Order of September 15, 2021 on that basis.

BACKGROUND

¶3 Eagle is an Oklahoma limited liability company that was previously placed under receivership in liquidation proceedings filed in Oklahoma County, State of Oklahoma ex rel. John Doak v. Eagle Ins. Agency Holdings, LLC, No. CV-2010-860. Prior to those proceedings, Eagle purchased a controlling interest in the stock of BMSI Holdings, the indirect owner of BancInsure, in 2009. Receiver alleges that Defendants misled Eagle as to BancInsure's financial condition, causing Eagle to overvalue the stock when deciding whether to purchase it, and that BancInsure was either insolvent or operating at a loss at that time.

¶4 Receiver filed a previous action against the individual and corporate Defendants on April 10, 2015 for negligent misrepresentation and negligence based on these and other related allegations in Case No. CJ-2015-2232. Receiver filed a dismissal without prejudice of that action on July 17, 2017. Receiver's voluntary dismissal stated that Receiver dismissed its cause without prejudice and that "[t]his action was deemed confessed 181 days after filing." Before that dismissal, Receiver also filed the underlying action in October 2016, asserting substantially similar claims against the same Defendants, which the trial court eventually dismissed with leave to amend. Receiver's Amended Petition was filed on February 21, 2020.

¶5 Without restating Receiver's lengthy allegations, the Amended Petition generally alleged that BancInsure began experiencing huge operating and capital losses that threatened its existence by year-end 2008, which continued until it was placed into liquidation in August 2014. Thus, BancInsure needed a cash infusion of $7.5 million. Some of the Individual Defendants, as directors and officers of BancInsure, allegedly sought those funds from Jerry Lancaster, an eventual owner and member of Eagle. According to the Amended Petition, Eagle was formed on May 21, 2009 to purchase a controlling interest in BancInsure and obtained 24.78% of outstanding stock in BancInsure's holding company, BMSI Holdings, for $7.5 million.[3]

¶6 Receiver alleges that BancInsure's financial statements substantially overstated its value, and that Eagle would not have paid $7.5 million for the BMSI stock but for this overstatement. It alleges that certain Individual Defendants were responsible for approving or preparing the financial statements, reviewing and approving the prospective stock purchase, and asserted claims against individual and corporate Defendants for negligent misrepresentation.[4] In relation, Receiver alleges Defendants knew or should have known of the misstatements in financial records from 2008 to 2012 and should have known Eagle and the Oklahoma Insurance Department relied on the accuracy of financial statements to approve the purchase in 2009 and to manage its investment thereafter. Receiver also asserted a negligence claim against Defendants on behalf of Eagle based on the allegedly misstated financials as well as alleged negligence in Defendants' supervision and operation of a particular insurance program that terminated in 2009. Finally, Receiver alleged Defendants' mismanagement of BancInsure caused its eventual liquidation.

¶7 The Individual Defendants filed Motions to Dismiss the Amended Petition. Though their arguments were not identical, they generally argued Receiver's claims were barred by the statute of limitations and that Receiver failed to state a claim upon which relief could be granted. The trial court granted those Motions to Dismiss,[5] with the exception of Sargent.[6] Defendant Sargent later filed a Motion for Summary Judgment on similar grounds, which was granted by Order of August 13, 2021. Thereafter, the trial court entered its Final Judgment on September 14, 2021, disposing of Receiver's claims against the non-appearing corporate defendants based on its determination that the statute of limitations applicable to claims against the Individual Defendants applied to claims against the Corporate Defendants as well.

¶8 Receiver appeals.

STANDARD OF REVIEW

¶9 The underlying appeal concerns orders granting both motions to dismiss and a motion for summary judgment on the statute of limitations and failure to state a claim upon which relief may be granted.

¶10 "'A statute-of-limitations issue ordinarily presents a mixed question of fact and law.'" Volkl v. Byford, 2013 OK CIV APP 73, ¶ 4, 307 P.3d 409 (quoting Sneed v. McDonnell Douglas, 1999 OK 84, ¶ 9, 991 P.2d 1001). However, where the "matter was presented as a motion to dismiss . . . the standard of review before the court is de novo." Volkl, 2013 OK CIV APP 73, ¶ 4, 307 P.3d 409 (citing Hayes v. Eateries, Inc., 1995 OK 108, ¶ 2, 905 P.2d 778).

¶11 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e., whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. "Therefore, as the decision involves purely legal determinations the appellate standard of review of a trial court's grant of summary judgment is de novo." Id. The Court will "examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." Ross by and through Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. Id.

ANALYSIS

¶12 Receiver poses numerous individual propositions of error which we summarize as contentions that the trial court erred by determining that the statute of limitations had run on Receiver's claims and that the trial court erred by determining that Defendants owed no duty to Eagle on which to base a cognizable claim against them. Because we affirm the trial court's determination that Receiver's claims were barred by the statute of limitations, we do not address Receiver's propositions of error regarding dismissal for failure to state a claim.

¶13 The trial court granted judgment to all Defendants based on the statute of limitations.[7] The parties appear to agree that a two-year statute of limitations originally applied to Receiver's claims for negligent misrepresentation and negligence pursuant to 12 O.S.2011, § 95(3).[8] The parties' dispute on appeal concerns their interpretation of a four-year extension of statute of limitations available to a receiver found in 36 O.S.2011, § 1924.1(A)(2) of the UILA.[9]

¶14 Briefly, the State of Oklahoma initiated a delinquency proceeding in Case No. CV-2010-860 (Okla. County) on July 14, 2010, applying for a receiver and liquidation of Eagle and requested injunctive relief. The Oklahoma County district court entered an order on that same day directing Eagle to show cause why an order of receivership should not be entered, and entered a temporary injunction prohibiting Eagle, its officers and directors from transacting Eagle business or wasting and disposing of its assets, among other things. On October 20, 2010, the trial court completed a series of evidentiary hearings on the receivership application and announced during the hearing that it would grant the application for receiver and liquidation, but did not memorialize that ruling by written order until April 12, 2011.

¶15 Defendants generally argue the four-year extension of the statute of limitations under section 1924.1 began to run either with the show cause order of July 2010 or the court's ruling by announcement and minute order in October 2010. Thus, they argue Receiver's 2015 action was untimely, and that the purported 2016 refiling of that action was also untimely. In contrast, Receiver argues the four-year period was tolled until the April 12, 2011 written order, making its 2015 action--and hence its 2016 action--timely.

¶16 Despite the parties' argument regarding section 1924.1, our first question is whether the 2016 action was timely under the savings statute, 12 O.S.2011, § 100. This is not a case in which the 2015 action was dismissed and then refiled within a year. Rather, Receiver filed the 2015 action, filed the substantially similar 2016 action, and then voluntarily dismissed the 2015 action in 2017. In that circumstance, the savings statute does not apply.[10]

¶17 Section 100 states:

If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

(emphasis added). By its plain language, the 2016 action must necessarily have been filed after the reversal or failure of the 2015 action for section 100 to apply.

¶18 Receiver implicitly recognizes the 2015 action must necessarily have been dismissed before the 2016 action was filed for section 100 to apply. Specifically, Receiver represented in its appellate briefing that the 2015 action was deemed dismissed 181 days after it was filed because it was never served based on 12 O.S.Supp. 2013, § 2004(I). That representation is incorrect. Rather, Receiver voluntarily dismissed the action on July 17, 2017, by a dismissal without prejudice, unilaterally stating that it had been confessed as deemed dismissed, as discussed above, citing section 2004(I). [11]

¶19 The version of section 2004(I) in effect when the 2015 action was filed and later dismissed stated:

If service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action shall be deemed dismissed as to that defendant without prejudice. The action shall not be dismissed if a summons was served on the defendant within one hundred eighty (180) days after the filing of the petition and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant. This subsection shall not apply with respect to a defendant who has been outside of this state for one hundred eighty (180) days following the filing of the petition.

(emphasis added).[12]

¶20 The 2015 action was not dismissed by the trial court upon a finding of lack of good cause. The statute does not authorize Receiver to unilaterally determine or confess the action was "deemed dismiss" or to orchestrate when an action will be deemed dismissed. It clearly contemplates an action will be deemed dismissed by order of the trial court after opportunity to show good cause. Receiver cites no authority to support its assumption that its action was deemed dismissed on Receiver's own declaration under this version of section 2004(I).[13] Likewise, neither the plain language of the statute nor authority interpreting it indicates that an action will be deemed dismissed on the 181st day if it is dismissed voluntarily by a plaintiff rather than by court order.

¶21 Accordingly, the filing of the 2015 action did not save the 2016 action. The question is then whether the 2016 action was timely without application of the savings statute.

¶22 The underlying action was filed on October 7, 2016. Receiver's claims in the Amended Petition allege that Defendants misstated BancInsure's financial condition in its December 2008 financial statements and that Eagle or its principals relied on those statements to decide whether to purchase a controlling interest in BancInsure. Eagle was allegedly formed in May 2009 to purchase the stock and bought a controlling interest in BancInsure on June 21, 2009.

¶23 Thus, the events giving rise to Receiver's claim occurred nearly seven years before the underlying action was filed. Receiver also claimed further harm by Defendants' alleged misrepresentations on BancInsure's financial condition through the time BancInsure was placed into liquidation in August 2014. Receiver has argued that the discovery rule may have applied to toll the statute of limitations on these claims, or that some of its claims constituted a continuing tort. Even if these arguments have merit, it is clear from Receiver's allegations that, at the very latest, those claims accrued and were known by the time Eagle was placed into liquidation, if not years before.[14] Receiver's October 2016 action was therefore untimely under the original two-year statute of limitations.

¶24 Additionally, the 2016 action is untimely under any of the parties' interpretation of the UILA. As mentioned above, section 1924.1(A) provides that, if the statute of limitations on an insurer's claim has not expired when a delinquency proceeding has commenced, an action by the receiver is not time-barred if filed before the later of the end of the period or four years after "the entry of the order commencing a delinquency proceeding or entry of a subsequent order granting a different form of relief in a delinquency proceeding." Id.
§ 1924.1(A)(2). The parties cannot agree whether section 1924.1(A)(2) means the statute runs from the July 2010 show cause order commencing the delinquency proceeding, the court's sustaining of the motion for receiver by minute order in October 2010, or written order memorializing that ruling in April 2011. However, it is unnecessary for the Court to answer this question. Receiver's 2016 action was filed outside the four-year extension provided by section 1924.1 under any of these events.

¶25 An appellate court will affirm a correct judgment on any applicable theory, even if different from that identified by the trial court. Jernigan v. Jernigan, 2006 OK 22, ¶ 31 n.31, 138 P.3d 539. Receiver's action against the collective Defendants is time-barred. Therefore, we affirm the trial court's judgment in favor of Defendants.

CONCLUSION

¶26 Receiver's suit was filed outside of the original two-year statute of limitations applicable to its negligence and negligent misrepresentation claims. Receiver may not rely on the 2015 action and the one-year savings statute because that action was not dismissed until 2017. Further, Receiver may not rely on the four-year period provided by section 1924.1 of the UILA because its 2016 filing was outside of that period. We therefore affirm the trial court's Final Judgment of September 15, 2021.

¶27 AFFIRMED.

BARNES, V.C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] These Defendants, referred to as "Individual Defendants", are Kent Frates, as P.R. of the Estate of Rodman Frates, Lisa Bays, Galen Pate, Stephen Frates, Lynette Parmley, Peter Prudden, Robb Evans, James Wallis, Leslie Nesvig, Cynthia McInerney, Jonathan Pate, Cara Byrne, William Funk, James Cross, Bruce Livingston, Ballard Cassidy, Eric Sandberg, Frederick Smith, Larry Parman, William Johnstone, Mark Krienke, and Rudy Erb.

[2] BMSI Holdings, Inc.; Bankers Multistate Insurance, Inc.; BancInsure, Inc.; BMSI Marketing, Inc.; Matterhorn Financial Services, Inc.; BancInsure Marketing Services, Inc.; and BI Management Company ("Corporate Defendants").

[3] BMSI Holdings' directors and officers allegedly authorized the transfer of those funds to BancInsure in June 2009.

[4] Receiver alleged that Defendant BancInsure was an Oklahoma domiciled insurer. The remaining Defendants appear to be parents, subsidiaries or affiliates of BancInsure or its various parents, subsidiaries or affiliates. While the Amended Petition offers factual allegations that mention BancInsure and BMSI Holdings, it offers no specific allegations regarding these other Corporate Defendants or any indication as to why they were sued.

[5] The trial court also denied Receiver's Motion to Reconsider. Thereafter, Receiver attempted to appeal the trial court's March 1, 2021 Order granting the Motions to Dismiss in Supreme Court Case No. 119,444, but that appeal was dismissed as premature.

[6] Sargent also filed a Motion to Dismiss the Amended Petition. However, the trial court found Sargent waived the opportunity to move to dismiss for failure to state a claim on which relief could be granted because he had already answered in the case. In reality, Sargent answered the original Petition, instead of filing a Motion to Dismiss. In that Answer, he preserved the defense of failure to state a claim upon which relief may be granted. This defense may be presented at the option of the pleader by motion or asserted in the answer and was never waived. See 12 O.S.2011, § 2012(B). However, that fact is irrelevant because Receiver's original Petition was dismissed, and it filed an Amended Petition. Sargent was entitled in response to that new pleading to move to dismiss or plead any applicable defenses, which ought to have been considered. Ultimately, however, Sargent procured summary judgment on the same grounds, which we review here.

On a related note, one of Receiver's points of appeal is that the trial court erred by not considering the allegations in its original Petition and its Amended Petition as true. Receiver's Amended Petition did not incorporate the original Petition. Upon the filing of the Amended Petition, the allegations of the original Petition not incorporated into the Amended Petition are abandoned. See e.g. Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc., 1982 OK 72, ¶ 4, 650 P.2d 857. The trial court did not err by failing to consider the allegations therein in its rulings. Likewise, Sargent was not prevented from moving to dismiss the Amended Petition because he failed to seek dismissal of the original Petition, even if he had actually failed to plead a defense of failure to state a claim in the first place.

[7] The statute of limitations arguments in the Motions to Dismiss and Sargent's Motion for Summary Judgment rely on allegations in Receiver's Amended Petition as well as the same undisputed operative events, i.e., the dates the 2015 and 2016 actions were filed, the date of dismissal of the 2015 action, and the dates various orders were entered in the delinquency proceedings. Therefore, we treat the Defendants' various motions collectively, and consider whether judgment was correct as a matter of law under the undisputed facts presented and/or alleged on the face of the Amended Petition.

[8] Section 95 was amended in 2017, but the statute of limitations for negligence and negligent misrepresentation remains the same.

[9] Section 1924.1 of that Act extends the statute of limitations on actions brought by a receiver that could have been commenced by an insurer subject to a delinquency action as follows:

A. If applicable statutory or common law, an order, or an agreement fixes, defines, extends or tolls a period within which the insurer may commence an action, and this period has not expired before the date of the filing of the initial petition in a delinquency proceeding as defined in Section 1901 of Title 36 of the Oklahoma Statutes, the receiver shall not by reason thereof be barred from commencing such an action if the receiver does so on or before the later of:

1. The end of the period, including any suspension of the period occurring on or after the filing of the initial petition in a delinquency proceeding; or

2. Four (4) years after the entry of the order commencing a delinquency proceeding or entry of a subsequent order granting a different form of relief in a delinquency proceeding.

[10] Receiver contended section 100 applied but did not expressly describe the circumstances of its dismissal or address whether it applied in this circumstance. Meanwhile, Defendants in the underlying action appear to have assumed section 100 applied for the sake of argument and contended Receiver's filing was untimely even if it applied. One Defendant contended that the "Parties" agreed the first suit was saved by the 2016 filing. We are not obligated to accept this erroneous assertion, even if unanimously accepted by all parties. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of the governing law." Keota Mills & Elevator v. Gamble, 2010 OK 12, ¶ 19, 243 P.3d 1156. "A stipulation between the parties or their counsel cannot control the action of the court in a matter of law, although they may stipulate respecting facts." Id.

[11] Receiver's brief mentions via footnote that it clarified the "deemed dismissal" by filing a formal dismissal in 2017. However, there is nothing of record to indicate that any Defendant in that case moved to dismiss, or that the court entered an order dismissing the case on its own motion.

[12] Section 2004(I) was amended thereafter in 2017, 2021 and 2022.

[13] As recognized in Thibault v. Garcia, 2017 OK CIV APP 36, 398 P.3d 331, there have been multiple versions of section 2004(I). The original version provided a case "shall be deemed to have been dismissed" if summons was not served "within one hundred and eighty (180) days after the filing of the petition." Id. at ¶ 6 (citing 12 O.S. Supp. 1984 § 2004(I)). Later amendments, including the 2013 amendment applicable here, included language that the action would be deemed dismissed unless a plaintiff was able to show good cause. There are a number of cases addressing aspects of the "deemed dismissed" language under the various versions of this statute. See e.g. Thibault, 2017 OK CIV APP 36; Hough Oilfield Service, Inc. v. Newton, 2017 OK CIV APP 31, 396 P.3d 230; Mott v. Carlson, 1990 OK 10, 786 P.2d 1247, abrogated on other grounds by Cole v. Josey, 2019 OK 39, 457 P.3d 1007; Moore v. Sneed, 1992 OK CIV APP 107, 839 P.2d 682. None of these cases address whether a plaintiff may voluntarily dismiss an action and claim it has been deemed dismissed at an earlier date for lack of service under a version of section 2004(I) which requires opportunity to show good cause. Though Hough, 2017 OK CIV APP 31, does not directly discuss this issue, it raises a relevant and persuasive point. In that case, the Court considered the application of the savings statute to the refiling of an action that had previously been deemed dismissed by order of the trial court for failure to serve process within 181 days. The plaintiff in Hough relied on Ross v. Kelsey Hayes, Inc., 1991 OK 83, 825 P.2d 1273, to argue an action dismissed without prejudice in which defendants had not been served could be refiled within one year of the dismissal order under section 100. Hough noted Ross involved a plaintiff's voluntary dismissal without service and did not involve the construction of section 2004(I), seeming to distinguish between a voluntary dismissal and an action dismissed by a court and deemed dismissed at a certain date.

[14] It is unnecessary for us to decide here exactly when Receiver's claims were known or should have been known in the exercise of reasonable diligence.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1992 OK CIV APP 107, 839 P.2d 682, 63 OBJ 3349, 
Moore v. Sneed
Discussed

 
2013 OK CIV APP 73, 307 P.3d 409, 
VOLKL v. BYFORD
Discussed at Length

 
2017 OK CIV APP 31, 396 P.3d 230, 
HOUGH OILFIELD SERVICE, INC. v. NEWTON
Discussed at Length

 
2017 OK CIV APP 36, 398 P.3d 331, 
THIBAULT v. GARCIA
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1990 OK 10, 786 P.2d 1247, 61 OBJ 309, 
Mott v. Carlson
Discussed

 
1991 OK 83, 825 P.2d 1273, 62 OBJ 2428, 
Ross v. Kelsey Hayes, Inc.
Discussed

 
1999 OK 84, 991 P.2d 1001, 70 OBJ 3139, 
Sneed v. McDonnell Douglas
Discussed

 
1995 OK 108, 905 P.2d 778, 66 OBJ 3281, 
Hayes v. Eateries, Inc.
Discussed

 
2006 OK 22, 138 P.3d 539, 
JERNIGAN v. JERNIGAN
Discussed

 
1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, 
Carmichael v. Beller
Discussed

 
2010 OK 12, 243 P.3d 1156, 
KEOTA MILLS & ELEVATOR v. GAMBLE
Discussed

 
2019 OK 39, 457 P.3d 1007, 
COLE v. JOSEY
Discussed

 
1982 OK 72, 650 P.2d 857, 
Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.
Discussed

 
1984 OK 43, 683 P.2d 535, 
Ross v. City of Shawnee
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 95, 
Limitation of Other Actions
Cited

 
12 O.S. 100, 
Limitation of New Action after Reversal or Failure Otherwise than on Merits
Discussed

 
12 O.S. 2004, 
Process
Discussed

 
12 O.S. 2012, 
Defenses and Objections - When and How Presented - By Pleading or Motion
Cited

Title 36. Insurance

 
Cite
Name
Level

 
36 O.S. 1924.1, 
Commencement of Action by Receiver - Defenses - Previous Judgments
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA